TEXAS HIGHWAY DEPARTMENT V. S. J. WEBER.

No. A-2023. Decided March 23, 1949.
Rehearing overruled April 20, 1949.
(219 S. W., (2d) Series, 70.)

*Price Daniel*, Attorney General, *Charles E. Crenshaw* and *Jesse P. Luton, Jr.*, Assistants Attorney General, for petitioneer.

The Court of Civil Appeals erred in holding that respondent's hay crop was taken, damaged, or destroyed for or applied to public use within the meaning of Section 17 of Article I, Texas constitution. State v. Hale, 136 Texas 29, 146 S. W. (2d) 731; Nordby v. Department of Public Works, 60 Idaho 475, 92 Pac. (2d) 789; Hanson v. City of Lon Angeles, 63 Cal. App. (2d) 426, 147 Pac. (2d) 109.

*F. A. Collins, Bracewell & Tunks* and *Bert H. Tunks*, all of Houston, for respondent.

The Court of Civil Appeals properly held that respondent's hay crop was taken, damaged or destroyed or applied to a public use within the meaning of the Constitution, section 17, Article I. Angelle v. State, 212 La. 1069, 34 So. (2d) 321; Gotcher v. State, 106 S. W. 2d) 1104.

MR. JUSTICE HARVEY delivered the opinion of the Court.

S. J. Weber sued the Texas Highway Department, after permission was granted by the Legislature of the State of Texas for him to bring the suit. The facts of the case are relatively simple, and are undisputed. On August 23, 1945, Weber was the lessee of a tract of land near the City of Houston, adjoining the Houston-Alvin highway, which was maintained by the Texas Highway Department. At that time Weber owned a hay crop growing upon the leased premises which was almost ready for harvest. On the date mentioned, employees of the Highway Department, while engaged in the maintenance of the highway, burned the grass along the shoulders of the highway near the

leased premises; the fire set by these employees spread onto the hay crop of Weber and destroyed a substantial portion of it. The trial court in its findings of fact, in addition to those above set out, found that Weber suffered damages in the sum of $6,-500.00 by reason of the destruction of his hay crop; further, it found that the damages necessarily must have resulted from some negligent act or omission of the Highway Department employees which was not authorized by the State, nor did such act or omission aid or benefit it in the execution of any work projects by the State. The trial court's conclusion was that, as a matter of law, the damages could not have resulted except from some unauthorized negeligent act or omission, and that, because the damage was necessarily the result of negligence, there was no taking, damaging, or destroying of property within the meaning of Article 1, Section 17 of the Constitution of the State of Texas, and therefore entered judgment for the defendant. Upon appeal by Weber to the Galveston Court of Civil Appeals, this judgment was reversed and rendered in favor of Weber for the amount of damages that the trial court found Weber to have sustained. 215 S. W. (2d) 258.

Respondent takes the position that the matter of negligence is not material in any respect to a proper determination of this cause; that the sole question here presented is whether or not, under the facts enumerated, the destruction of Weber's hay crop constituted a "taking or damaging" of property under the provision of the Constitution hereinabove mentioned. The contention of the petitioner, on the other hand, is that the damage complained of could not have resulted except from some negligent, unauthorized act of the employees of the Highway Department, for which the Highway Department was not liable; that the facts and circumstances alleged in respondent's petition upon which he went to trial, and the proof adduced thereon, do not show that the hay crop was taken, damaged, or destroyed for or applied to public use.

■ In the absence of a constitutional or statutory provision therefor, the state is not liable for the torts of its officers or agents. Further, the state in the exercise of its sovereign authority has the right to take, damage, or destroy private property for a public use, subject, of course, to the right of the owner thereof to adequate compensation. These principles of law are so well established and uniformly recognized that it is trite to repeat them. The plaintiff predicated his cause of action, necessarily, in view of the non-suability of the state for torts, com-

mitted by its agents, upon the provision of the Constitution of Texas which reads as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; * * *."

■ Under the facts of this case, the cause of action is simply one sounding in tort. The Highway Department employees were engaged in the maintenance of the highway at the time they set the fire that caused the damage to respondent's hay crop. They were engaged in the discharge of a mandatory, governmental duty. There was no authorization or necessity for them to cause damage to adjoining property by reason of burning the grass on the shoulders of the highway. The damage occassioned by the fire was not necessarily an incident to, or necessarily a consequential result of, the act of the employees in clearing the grass from the highway. The spreading of the fire onto the premises of Weber was purely and solely the result of negligence; in no conceivable way can it be said that the hay crop was taken or damaged for public use. To hold otherwise would be, in effect, to establish a principle of law that the state is responsible for all injuries or damages occasioned by its agents in the negligent performance of their official duties. It is true, and unfortunately so, that respondent has suffered damage to his property. One's normal reaction is that he should be compensated therefor. On the other hand, the doctrine of the non-suability of the state is grounded upon sound public policy. If the state were suable and liable for every tortious act of its agents, servants, and employees committed in the performance of their official duties, there would result a serious impairment of the public service and the necessary administrative functions of goverenment would be hampered.

■ The constitutional provision of Texas under consideration, and more or less similar provisions are contained in the constitutions of all the states of this nation, without doubt constitutes a limitation upon the right of eminent domain, which power is an inherent attribute of sovereignty. This power, defined by Chief Justice Gaines in the case of City of Austin v. Nalle, 102 Texas 536, 538, 120 S. W. 996, as "the sovereign power vested in the state to take private property for the public use, providing first a just compensation therefor," exists independent of constitutional provision and is a right inherent in organized society itself. The written constitutions have recognized this principle, but have added a requirement that when private property is taken, damaged, or destroyed for a public

use, the owner thereof shall receive just compensation. The essential element that must exist in order for a taking of private property to be compensable is that the property must be taken for, or applied to, a public use. One hardly would contend in cases where by reason of the negligent performance of his duties by an agent of the state a person has suffered the loss of his life or damage to his person, that the state would be responsible in damages by reason thereof. Gotcher v. State, Texas Civ. App., 106 S. W. (2d) 1104. Such situations, in which the state is not subject to liability, lend point to what we have just said. One's life and person are infinitely more valuable than his material possessions. Had it been intended by the framers of our Constitution that the state should be liable for all tortious acts of its agents, it would have been so stated in the article in question in some form or manner. Instead, the provision relates only to private property which is taken for public use. Manifestly, it was not intended that where private property has been damaged or destroyed through the tortious conduct of the state's agents in the performance of their official functions the state should be suable.

Respondent relies very strongly upon the case of State v. Hale, 136 Texas 29, 146 S. W. (2d) 731, the opinion being written by Justice Sharp. That case is clearly distinguishable from the instant one upon the facts. Hale and wife brought suit against the State upon the theory that their property had been taken for public use under Article 1, Section 17 of the State Constitution, by reason of the fact that the Highway Department in the construction of a public highway had built a dump and temporary road adjacent to their property, which caused water to overflow their land and result in extensive damage to it. As stated in the opinion in that case, "the damage sued for and recovered was for permanent injury to the land by reason of obstructing the natural flow of the flood waters which theretofore had passed unimpeded over the old roadway, thereby depositing large quantities of sand and other substances on the land." (126 Texas 32, 146 S. W. (2d) 734.) This Court held, under such circumstances, with a wealth of authorities to sustain the holding, that the land of Hale was taken for a pub- use. However, Justice Sharp carefully pointed out the distinction between a cause of action based upon the section of the Constitution in question and a cause of action based upon a tort, in the following language:

"The liability of the State under Section 17 of Article 1, supra, for taking, damaging, or destroying private property

for public use, where the authority is property exercised, should not be confused with the claim for damages caused by the negligent acts or wrongs committed by its agents or officers. In the first class of cases the taking or damaging of such property. is done for the State in the exercise of lawful authority. * * * In other words, where the State has exercised its lawful authority to take or damage private property for the construction of a public highway, it has the power to carry out its plans relating to such highway and compensate the owner of such property for the damages which proximately resulted from the construction of such highway." 126 Texas 37, 146 S. W. (2d) 731, 737.

Respondent cites two cases by the Supreme Court of Louisiana to sustain his contention. In Nagle v. Police Jury of Caddo Parish, 175 La. 704, 144 So. 425, and in DeMoss v. Police Jury of Bossier Parish, 167 La. 83, 118 So. 700, 68 A. L. R. 336, under a provision of the Louisiana Constitution very similar to that of Texas, recovery in the first case was allowed by the Supreme Court of Louisiana for damages caused by a fire spreading onto the plaintiff's land from debris being burned on the highway by state employees, and in the second case for damages caused by the acts of employees of the State while maintaining a highway. In the latter cause, a fence necessarily was taken down by state employees, and damage was caused to the plaintiff's corn and cotton crop by cattle entering his field as a result of the tearing down of the fence. However, in a very late pronouncement upon this question, Angelle v. State, 212 La. 1069, 34 So. (2d) 321, 2 A. L. R. (2d) 666 (1948), the Supreme Court of Louisiana expressly held that the destruction of property by fire through the negligent operation of spraying apparatus by agents of the State Department of Agriculture while disinfecting farm produce was not a taking or damaging of private property for public use so as to render the state suable therefor where such destruction was unintentional and not a necessary consequence of the spraying operation. The Court in that case reviewed its prior holdings to the contrary, including the De Moss and Nagle cases, and specifically overruled them, stating that by reason of those decisions, based upon the case of Green v. Board of Commissioners, 163 La. 117, 111 So. 619, unwittingly there had been introduced into the jurisprudence of Louisiana a doctrine contrary to the fundamental principle that the state and its subdivisions may not be sued for torts committed by its officers and employees.

While in some other jurisdictions a contrary view has been

taken with reference to the question under consideration, the weight of authority is in support of the Angelle case and what we have said herein. Hughes v. United States, 230 U. S. 24, 33 Sup. Ct. 1019, 57 L. Ed. 1374, 46 L. R. A. (N. S.) 624; Keokuk & Hamilton Bridge Co. v. United States, 260 U. S. 125, 43 Sup. Ct. 37, 67 L. Ed. 165; State v. Dart, 23 Ariz. 145, 202 Pac. 237; Miller v. City of Palo Alto, 208 Cal. 74, 280 Pac. 108; Bates v. Madison County, 32 Ga. App. 370, 123 S. E. 158; Nordby v. Department of Public Works, 60 Idaho 475, 92 Pac. (2d) 789; Hamilton v. City of Bismark, 71 N. Dak. 321, 300 N. W. 631; Welker v. Annett, 44 Okla. 520, 145 Pac. 411; Gearin v. Marion County, 110 Ore. 390, 223 Pac. 929; Lizza v. City of Uniontown, 345 Pa. St. 363, 28 Atl. (2d) 916; Houston v. State, 98 Wis. 481, 74 N. W. 111, 42 L. R. A. 39.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

*Opinion delivered March 23, 1949.*

Rehearing overruled April 20, 1949.