

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

February 26, 1975

Major General Thomas S. Bishop
The Adjutant General of Texas
P. O. Box 5218
Austin, Texas 78763

Opinion No. H- 540

Re: Legality of use of
National Guard facilities
by civilian groups.

Dear General Bishop:

The Adjutant General's Department has received several requests to use national guard and air national guard facilities for various purposes including Civil Air Patrol encampment, Boy Scount Posts and other youth group activities.

The Adjutant General's first question is whether or not his Department is authorized to permit use of armory facilities for such purposes, and whether state funds may be used to pay utility and maintenance costs incuﾟred by such groups while utilizing armory facilities.

We think both federal regulations applicable to National Guard units and Texas statutes governing control and command of State military forces permit the use of armory facilities by the civil air patrol cadets, Boy Scouts of America, Girl Scouts, and other youth groups when in the State's judgment such use is practical, supports the public purpose of a State militia and entails no additional expense to the State.

The Adjutant General controls the military department of Texas and all matters pertaining to his department and the military forces of this State. He is subordinate only to the Governor, who, as Commander-in-Chief, has constitutional and statutory authority to issue regulations and orders governing the affairs of the Texas National Guard as an adjunct of the State militia. Texas Constitution art. 4, § 7; V. T. C. S. art. 5765, § 4; V. T. C. S. art. 5780, § 2; V. T. C. S. art. 5781, § 4.

The Adjutant General is given the power to lease or sublease buildings "to be used for armory and other proper purposes . . . ." V. T. C. S. art. 5781, § 4. He may prescribe regulations controlling its use so long as it is not inconsistent with the laws or orders to which his department is subject.  V. T. C. S. art. 5781, § 8.

We conclude that it is within the discretion of your department, subject to orders or regulations of the Governor and Armory Board, to authorize the use of armory facilities by the Civil Air Patrol, Boy Scouts of America, Girl Scouts and other youth groups if you determine, as a factual matter, that such use of armory facilities promotes the proper public purpose of the State militia.

In making this determination you are entitled to give some weight to federal regulations relating to use of National Guard facilities, since the federal government provides 75% of the construction and maintenance costs of National Guard Armories in Texas.  Its regulations authorize use of these facilities by youth groups, when the state adjutant general determines such uses are practical.  See Departments of the Army and the Air Force, National Guard Regulations No. 735-12 and Air National Guard Regulations No. 67-1 (Jan. 26, 1973).

You have also asked what legal liability would be incurred by the State of Texas, or members of the Guard individually, or state employees individually, as a result of death or injury to members of the Civil Air Patrol, Boy Scouts or other youth groups while using National Guard facilities.

Liability for tortious conduct always will depend on the facts of each particular case.  Without being presented with a particular fact situation we can discuss your questions only in the terms of general rules, and it should be understood that the application of the general rules and any exceptions which might apply will be governed by the facts of any specific case.

Generally, the State of Texas is immune from liability unless permission to be sued has been given. Texas Highway Dept. v. Weber, 219 S. W. 2d 70 (Tex. Sup. 1949); Davis v. County of Lubbock, 486 S. W. 2d 109 (Tex. Civ. App. --Amarillo 1972, no writ).

The Texas Tort Claims Act, article 6252-19,  V. T. C. S., constitutes a waiver of sovereign immunity and grants permission for suit against the State under certain circumstances.

The Act, however, preserves the State's immunity against:

> [a]ny claim arising out of the activities of the
> National Guard, the State Militia, or the Texas
> State Guard, when on active duty pursuant to
> lawful orders of competent authority. (Art. 6252-19,
> § 6).

Article 5765, V. T. C. S., extends immunity to members, individually, of the State Military Forces for any acts or acts done by them while in the discharge of their duty after being ordered by proper authority into active service of the State. Sec. 8, amended by Acts 1973, 63rd Leg., p. 988, ch. 399, eff. Jan. 1, 1974. See V. T. C. S., art. 5783, § 1. .  .

The Texas Tort Claims Act also preserves sovereign immunity from claims arising from intentional torts, article 6252-19, section 14(10), and does not remove the individual immunity of public officers, agents or employees of government from tort claims, but preserves such immunity to the extent that such persons are presently immune. V. T. C. S. art. 6252-19, § 15.

Responding to your specific questions, the Governor as Commander in Chief of the State Militia, the Adjutant General and unit commanders and individual guardsmen would enjoy the protection against tort liability afforded by section 8 of article 5765, V. T. C. S. for injuries to others when arising out of the lawful performance of their duties while in active military service to the State.

Although we believe section 8 of article 5765 is intended to fully protect officers and members of the State Military, individually, for liability from any act while in the discharge of their military duties, and while section 14(6) of article 6252-19 retains the State's immunity from suit for injuries arising out of militia activities, it is our opinion that the Texas Tort Claims Act (art. 6252-19) has waived the State's immunity from suit for death or injuries proximately caused from some condition or use of tangible property, real or personal, when the State has breached the duty it owes to licensees on State property. See V. T. C. S. art. 6252-19, § 18(b).

The duty owed to a licensee is described by the Supreme Court of Texas in State v. Tennison, 509 S. W. 2d 560 (Tex. Sup. 1974) as the duty:

> . . . not to injure [a licensee] by willful, wanton or gross negligence. . . . An exception to the general rule is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe.

The State could be sued and held liable for money damages if injuries to members of youth groups on armory property are a result of a breach of the State's duty toward licensees on armory facilities. Officers and individual guardsmen would not be liable for such injuries.

State employees at armory facilities, as distinguished from National Guardsmen on active duty, could be individually liable for tortious injuries to members of youth groups using Army property whether within the scope of their employment or not if proximately caused by their negligence. The State could be liable for the tortious conduct of such employees if the act resulting in the injury is within the scope of their employment and otherwise cognizable under section 3 of the Texas Tort Claims Act. Art. 6252-19, supra. An individual who successfully prosecutes a claim against the State for injuries caused by the tortious conduct of its employees, is thereafter barred from asserting the same claim against the employee, individually. V. T. C. S. art. 6252-19, §12.

You also ask whether National Guard Technicians, who are federal employees paid to assist the Texas National Guard (32 U. S. C. Sec. 709), would be liable, individually for their torts. The answer is no, if the act causing the injury is within the scope of their federal employment. The exclusive remedy in such case is against the federal government. 28 U. S. C. Sec. 2679; Noga v. U. S., 411 F. 2d 943 (9th Cir. 1969), cert. denied 396 U. S. 841 (1969). If not within the scope of their employment federal technicians would be individually liable, and the State of Texas would not ordinarily be responsible for the consequences of their acts.

Finally we are asked if the State, its officers, employees and guardsmen can protect against tort liability if an agreement to that effect is executed by each cadet, scout, or other member of a youth group, or by their parents or guardians.

The Supreme Court of Texas, considering the validity of an exculpatory clause in a lease agreement with a public housing authority, has had this to say:

> Agreements exempting a party from future liability
> for negligence are generally recognized as valid and
> effective except where, because of the relationship of
> the parties, the exculpatory provision is contrary to
> public policy or the public interest.  If the contract is
> between private persons who bargain  from positions
> of substantially equal strength, the agreement is
> ordinarily enforced by the courts.   The exculpatory
> agreement will be declared void, however, where
> one party is at such disadvantage in bargaining power
> that he is practically compelled to submit to the stipulation.
> Crowell v. Housing Authority of City of Dallas, 495 S. W. 2d
> 887 (Tex. Sup. 1973).

The clause required by the Housing Authority was said to be a classic example of unequal bargaining power and therefore invalid.  We believe that a cadet or Boy Scout confronted with the choice between signing the exculpatory agreement, assuming he has power to do so, and joining his troop, or not signing and thereby forfeiting the privilege of sharing in a valuable training program, could present another situation of unequal bargaining power and force  a young person or his parent to make a difficult choice while unaware of the risks which might accompany a prolonged visit to a National Guard Armory.  For these reasons, a release from liability might not, in our opinion, protect the State, its officers, or employees any further than the statutes protect them already.

### SUMMARY

The Adjutant General has authority to permit
the use of Armory facilities by the Civil Air Patrol,

Major General Thomas S. Bishop, page 6   (H-540)

Boy Scouts and other groups if he determines that
such use is practical, promotes the public purpose
of a State militia, and entails no additional expense
to the State.   The State may be liable under certain
circumstances for injuries arising from a breach of
its duty toward licensees on armory property, and
for certain injuries proximately caused by State
employees acting within the scope of their state employ-
ment.   An exculpatory agreement executed by members
of a youth group or by their parents might not  protect
the State from future liability for its negligence  any
further than the State, its employees, or military
personnel are presently protected by statute.   The
liability of the State and that of its officers and
employees always will depend on the facts of any
particular case.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee