cedar park 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-91-139-CV




DONALD, WILLA AND DONNA O'CONNOR,



 APPELLANTS


vs.





CITY OF CEDAR PARK,



 APPELLEE


 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 89-149-C, HONORABLE JOHN R. CARTER, JUDGE PRESIDING



 



 Appellants Donald O'Connor, Willa O'Connor, and Donna O'Connor (the
O'Connors), sued appellee, City of Cedar Park (Cedar Park), for compensation for flood damage
to their property caused by a partially constructed drainage ditch. They appeal a district court
summary judgment, in favor of Cedar Park, ordering that the O'Connors take nothing, dismissing
the suit, and ordering the O'Connors to pay costs. We will affirm the summary judgment in part
and reverse and remand in part.



BACKGROUND


 In 1985, Cedar Park gave Thornton-Bolding Partnership permission to build the
Park Place III development near the O'Connors' properties. These properties were in the 100-year flood plain and, according to the record, experienced severe flooding during rainfalls
beginning in the 1970s. Thornton-Bolding Partnership included in the development plans a
drainage ditch to alleviate the flooding. During the construction of the ditch, a gas line was found
running across the projected path of the ditch at a point right behind the O'Connors' properties. 
The construction was halted immediately in order to confer with Lone Star Gas Company, the
owners of the pipeline. The incomplete drainage ditch created a dam which caused additional
flooding on the O'Connors' properties during the next heavy rainfall. Flooding continued to
occur until a subsequent owner of the project completed the ditch. Since that time, the O'Connors
concede that they have experienced no further problems.

 The O'Connors sued Cedar Park under a constitutional-taking theory (inverse
condemnation), a water-code theory, and a common-law negligence theory. Cedar Park filed a
motion for summary judgment asserting that no issues of material fact existed and that the
summary judgment evidence established, as a matter of law, that plaintiffs could not prevail on
at least one essential element of each of their three causes of action. The O'Connors' response
claimed generally that factual and legal issues precluded summary judgment and specifically
addressed two fact issues and two legal issues in regard to the constitutional-taking claim. The
trial court granted the motion for summary judgment without specifying its grounds, allowing this
Court to affirm if any one of the grounds in the motion is meritorious. Rogers v. Ricane Enters,
Inc., 772 S.W.2d 76, 79 (Tex. 1989).



STANDARD OF REVIEW


 A trial court should grant a motion for summary judgment only if the movant
establishes by competent summary judgment evidence that no genuine issue of material fact exists
to be decided and that the movant is therefore entitled to judgment as a matter of law. Nixon v.
Mr. Property Management Co., 690 S.W.2d 548 (Tex. 1985). Movant has the burden of proof,
and all reasonable doubts and inferences must be resolved in favor of the nonmovant. Wilcox v.
Saint Mary's Univ., 531 S.W.2d 589, 593 (Tex. 1976). A defendant who moves for summary
judgment is required to prove that, as a matter of law, the plaintiff has no cause of action, i.e. no
genuine issue of material fact exists as to one or more of the essential elements of the plaintiff's
cause of action. Citizens First Nat'l Bank v. Cinco Exploration Co., 540 S.W.2d 292, 294 (Tex.
1976). Where the trial court's order does not give a specific reason for granting the judgment,
the nonmovant, on appeal, must show why each ground asserted in the motion is insufficient to
support the order. Rogers, 772 S.W.2d at 79; McCrea v. Cubilla Condominium Corp., 685
S.W.2d 755, 757 (Tex. App. 1985, writ ref'd n.r.e.). 



DISCUSSION


1. Inverse Condemnation 

 The O'Connors' first claim is based upon an inverse-condemnation theory which
requires taking, damage, or destruction of property for a public use. See Tex. Const. art. I, § 17. 
Cedar Park argues that where the damage is caused exclusively by the alleged negligence of the
governmental unit, there is no inverse condemnation cause of action. We agree. A taking under
the Texas Constitution must be intentional. See Steele v. City of Houston, 603 S.W.2d 786, 790-91 (Tex. 1980); City of Abilene v. Smithwick, 721 S.W.2d 949, 951 (Tex. App. 1986, writ ref'd
n.r.e.). Further, the taking or damaging of the property must be for a public use. Smithwick, 721
S.W.2d at 952. In this case, the injury was the result of unforeseen circumstances delaying the
completion of the ditch. Although the ditch, as completed, might have contributed to a public use,
the uncompleted ditch and subsequent flood were not part of the public use. See Texas Highway
Dept. v. Weber, 219 S.W.2d 70 (Tex. 1949); Abbott v. City of Kaufman, 717 S.W.2d 927, 932
(Tex. App. 1986, writ dism'd). Since the O'Connors did not allege that the completed project,
as planned, caused the flooding but instead alleged, under their pleadings, that the negligence of
Cedar Park in failing to properly supervise the construction of the project caused the flooding, this
action sounds in negligence and cannot constitute the basis of an inverse condemnation action. 
Point of error one is overruled.



2. Water Code 

 In point of error two the O'Connors claim that the trial court erred in granting
summary judgment because the evidence failed to disprove that Cedar Park impounded or diverted
surface waters in a manner that damaged the O'Connors' property by its overflow in violation of
law. (1) Cedar Park's motion for summary judgment asserted that the statute itself includes an
exception for municipalities engaged in flood control. It was the court's function to determine if
the exception applied to Cedar Park. 

 The record contains uncontroverted evidence that Lobo Street flooded frequently
and that the proper remedy was a ditch behind the O'Connors' properties. Further,
uncontroverted evidence established that once the ditch was completed, the flooding stopped. The
statutory exception applies to construction of improvements to control flooding, and canals for
irrigation or other purposes authorized by the code. Id. at § 11.086(c). Although there is no case
law under this section, we believe the language itself clearly exempts the construction of a
drainage ditch to prevent flooding from the proscriptive section of the Code.

 It is true that Cedar Park, as a municipality, falls within the purview of the first
subsection. See Abbott v. City of Princeton, 721 S.W.2d 872, 875-76 (Tex. App. 1986, writ ref'd
n.r.e.) (the codification of the water control statutes requires the application of code construction
rules, under which a municipality is included in the definition of "person"). However, inclusion
of Cedar Park under the prohibitory section does not preclude application of a statutory exception
where the uncontroverted facts support application as they do in this case. The uncontroverted
summary judgment evidence demonstrated that Cedar Park approved the drainage ditch plans for
purposes of flood control and, therefore, was exempt under subsection (c) from the prohibitions
of subsection (a) of section 11.086 of the Water Code. The second point of error is overruled. 




3.  Common Law Negligence 

 The O'Connors' third amended petition included a common-law negligence claim
against Cedar Park, on the grounds that Cedar Park contributed to or negligently delayed the
completion of the drainage ditch. Further, they specifically asserted as a cause of their damages
that Cedar Park negligently (1) failed to oversee properly the installation of the ditch; (2) failed
to investigate the effects of the ditch on its citizens; and (3) failed to take prompt action to resolve
the problems accrued and occurring after construction of the ditch was abandoned.

 The motion for summary judgment filed by Cedar Park also urged that
governmental immunity applied and that the facts of this case did not fit the exceptions provided
by the Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(A) (1976). (2) 
Summary judgment was proper only if Cedar Park established by uncontroverted evidence that
the O'Connors could not prevail on an essential element of their claim.

 In order to recover for property damage against a municipality acting in its
governmental capacity, the Tort Claims Act requires a plaintiff to prove that the property damage
arose from the operation or use of a motor-driven vehicle or motor-driven equipment. Tex. Civ.
Prac. & Rem. Code Ann. § 101.021(1)(A) (1986). In this case the uncontroverted evidence
established that no motor-driven vehicle or equipment caused the O'Connors' alleged property
damage. Therefore, the Tort Claims Act does not waive Cedar Park's immunity from liability
for the O'Connors' property damage. 

 The O'Connors also assert personal injuries in the nature of emotional distress
resulting from the flooding in question. In its motion for summary judgment, Cedar Park asserts
that, as a matter of law, the alleged injuries were not caused by a "use" or "condition" of tangible
real property as the Tort Claims Act requires. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2)
(1976).

 The O'Connors urge that a genuine issue of material fact exists on their common-law negligence claim for personal injuries which precludes the district court from granting
summary judgment. We agree. In his oral deposition, a part of the summary judgment proof,
Donald O'Connor testified that Cedar Park was well aware of the presence of the gas line before
construction started and had even negotiated with Lone Star Gas regarding the cost of relocating
the line. O'Connor testified that the City Engineer took an active supervisory role in the
construction of the ditch. Finally, O'Connor testified that the City of Cedar Park "had made the
decision to stop [the] digging" when the gas line was discovered and was primarily responsible
for the delay in completing the construction of the ditch. 

 The O'Connors' personal injury claim is premised on section 101.021(2) of the
Tort Claims Act, which section waives a governmental unit's immunity from liability from a claim
for, "personal injury and death so caused by a condition or use of tangible personal or real
property if the governmental unit would, were it a private person, be liable to the claimant
according to Texas law." In order for the O'Connors to recover for injury caused by the "use"
of city property, they must show either negligence by an employee of Cedar Park responsible for
the use of the property, see State v. Tennison, 509 S.W.2d 560, 562 (Tex. 1974), or that the real
property being used was under the control of the unit of government or one of its employees at
the time of the injury causing event. See City of Denton v. Van Page, 701 S.W.2d 831, 835 (Tex.
1986); Payne v. City of Galveston, 772 S.W.2d 473 (Tex. App. 1989, writ denied). 

 Here, the direct testimony of Donald O'Connor creates a fact dispute regarding the
involvement of Cedar Park in the supervision and ultimate delay of the construction project. This
issue must be resolved by the trier of fact and is not appropriately resolved by summary judgment. 
We overrule the O'Connors' third point of error as to their property claim and sustain it as to their
personal injury claim. 



CONCLUSION


 We reverse the final summary judgment of the district court only as to the common-law negligence claim for personal injury damages and remand that portion of the cause to the
district court for further proceedings. We affirm the summary judgment as to all other claims.





 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed in Part; Reversed and Remanded in Part

Filed: June 24, 1992

[Do Not Publish]
1.   The Water Code prohibits diversion or impoundment of "the natural flow of surface
waters in this state . . . in a manner that damages the property of another by the overflow
of the water diverted or impounded." See Tex. Water Code Ann. § 11.086(a) (1986). 
However, subsection (c) creates an exception for "the construction and maintenance of levees
and other improvements to control floods, overflows, and freshets in rivers, creeks, and
streams or the construction of canals for conveying water for irrigation or other purposes
authorized by this code." Tex. Water Code Ann. § 11.086(c) (1986) (emphasis added). 
2.   Construction of a drainage ditch is a governmental function. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.0215(9) (Supp. 1992). Where a city is engaged in a governmental
function, the doctrine of governmental immunity applies. Gates v. City of Dallas, 704 S.W.2d
737, 739 (Tex. 1986); City of Galveston v. Posnainsky, 62 Tex. 118, 125, 127 (1884).