COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
CITY OF EL PASO,                                           )                  No. 08-03-00493-CV
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                 County Court at Law No. 3
)
ROBERT MILLARD, Individually and d/b/a     )                  of El Paso County, Texas
EL PASO SPORTS & RECREATION CO.,      )
and SAR INVESTMENTS, INC., d/b/a              )                  (TC# 2000-3128)
CONSTRUCTION INVESTMENT                    )
DEVELOPMENT & PLAYGROUND               )
CONSTRUCTOR, INC.,                                     )
)
                                    Appellees.                        )

MEMORANDUM OPINION

            The City of El Paso appeals the partial denial of its plea to the jurisdiction. It brings this
accelerated interlocutory appeal pursuant to Section 51.014(a)(8) of the Texas Civil Practice and
Remedies Code. We affirm.
FACTUAL SUMMARY 
            Around October 30, 1990, Robert Millard purchased a trailer which he reconditioned and
parked on property owned by SARS Investments and located in El Paso County. Millard used the
trailer to store tools, equipment, furniture, and other personal property. 
            In late July 1998, Millard needed tools and other items from the trailer and sent an employee
out to the property to retrieve them. When the employee arrived, the trailer wasn’t there. He notified
Millard who then went to the property to see for himself. Upon verifying that the trailer was
missing, Millard filed a report with the police department. 
            Sam’s Club Warehouse employees told Millard that the police department may have removed
the trailer since they had seen three police vehicles in the area. When Millard went to the police
department with this information, he was told that three patrol cars would not have been dispatched
to handle such a situation. A detective was to be assigned to the case and Millard was advised to
find out which company removed the trailer. He discovered that El Paso Towing had towed it and
that there was a $1,060 storage fee, which he was unable to pay. Millard asked to see the trailer and
check its contents, but the towing company denied his request. Millard filed a complaint and
ultimately learned that the trailer had been sold at auction by El Paso Towing without notice to him. 
He was later notified by the police department that an internal affairs investigation had been
conducted. The impounding officer reported that he had removed the trailer for safekeeping because
it had been heavily vandalized. The investigation resulted in a finding of misconduct by the officer
and disciplinary action was taken. 
            Millard sued the City of El Paso and El Paso Towing, alleging inverse condemnation. The
City answered and filed a motion for summary judgment and plea to the jurisdiction. Millard then
amended his pleadings, alleging inverse condemnation and fraud by the City, and conversion,
negligence per se, and fraud by El Paso Towing. The trial court granted the plea as to the fraud
allegations but denied it with regard to the constitutional taking. It also denied summary judgment
on the issue of limitations. This accelerated appeal follows. 
GOVERNMENTAL ENTITY FRAUD
            For purposes of convenience, we will address the City’s issues in reverse order. In Point of
Error Two, the City complains that a governmental entity cannot be liable for fraud. Although the
trial court granted the City’s motion to dismiss based on the allegation of fraud, the City anticipated
that Millard would raise the issue on appeal. Since the City raised this issue in anticipation of a cross
point which did not materialize, we overrule Point of Error Two.
PLEA TO THE JURISDICTION
            In Point of Error One, the City argues that Millard failed to properly plead a constitutional
cause of action for a “taking” in order to waive sovereign immunity, and thus, the trial court
erroneously denied its plea to the jurisdiction. A plea to the jurisdiction is a dilatory plea by which
a party contests the trial court’s authority to determine the subject matter of the cause of action. City
of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App.--Fort Worth 1999, pet. dism’d w.o.j.); State v.
Benavides, 772 S.W.2d 271, 273 (Tex.App.--Corpus Christi 1989, writ denied). The plaintiff has
the burden to allege facts affirmatively demonstrating that the trial court has subject matter
jurisdiction. Texas Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); City
of Saginaw, 996 S.W.2d at 2. 
Standard of Review
            Subject matter jurisdiction is a legal question, and we review the trial court’s ruling on a plea
to the jurisdiction under a de novo standard. City of Saginaw, 996 S.W.2d at 2; Texas Dept. of
Health v. Doe, 994 S.W.2d 890, 892 (Tex.App.--Austin 1999, pet. dism’d by agr.). In reviewing the
trial court’s denial of a plea to the jurisdiction, we look solely to the allegations in the petition
and accept them as true. See City of Saginaw, 996 S.W.2d at 2-3; Firemen’s Ins. Co. of Newark,
New Jersey v. Board of Regents of the University of Texas System, 909 S.W.2d 540, 541
(Tex.App.--Austin 1995, writ denied). We do not examine the merits of the case. See City of
Saginaw, 996 S.W.2d at 3. If the petition does not allege jurisdictional facts, the plaintiff’s suit is
subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction. City
of Saginaw, 996 S.W.2d at 3; see Texas Ass’n of Bus., 852 S.W.2d at 446; Liberty Mut. Ins. Co. v.
Sharp, 874 S.W.2d 736, 739 (Tex.App.--Austin 1994, writ denied).
The Constitutional Provision
            Article I, section 17 provides: 
No person’s property shall be taken, damaged or destroyed for or applied to public
use without adequate compensation being made, unless by the consent of such
person; and, when taken, except for the use of the State, such compensation shall be
first made, or secured by a deposit of money; and no irrevocable or uncontrollable
grant of special privileges or immunities, shall be made; but all privileges and
franchises granted by the Legislature, or created under its authority shall be subject
to the control thereof.
Tex.Const. art. I, § 17. Stated simply, when a governmental entity takes, damages, or destroys
property for public use, immunity from both suit and liability is waived. City of Beaumont v.
Bouillion, 896 S.W.2d 143, 149 (Tex. 1995); Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex.
1980).
Was There a “Taking”?
            Millard sued for inverse condemnation, which is “[a]n action brought by a property owner
for compensation from a governmental entity that has taken the owner’s property without bringing
formal condemnation proceedings.” Black’s Dictionary 287 (7th ed. 1999). Millard alleged that
the City’s act of entering upon private property and taking his trailer to abate a public nuisance
amounted to an intentional taking or destruction of, or damage to, his property for a public use
without adequate compensation. The petition referenced notations in the police records that the
trailer had been removed because it was heavily damaged by graffiti, some of which involved a local
gang. Millard complained that the City’s actions resulted in an inverse condemnation because he
received no notice of the trailer’s removal or sale and that as a result, any governmental immunity
was waived. 
            The City countered that Millard had to establish that (1) the City intentionally performed
certain acts, (2) which resulted in a “taking” of Millard’s property, (3) for public use. City of Abilene
v. Smithwick, 721 S.W.2d 949, 951 (Tex.App.--Eastland 1986, writ ref’d n.r.e.). The City argued
that its acts were negligent rather than intentional, and that the taking was not for public use.
Negligent or Intentional Act?
            Texas jurisprudence has consistently held that the property damage must not result from
negligence in order to maintain an inverse condemnation action. Steele, 603 S.W.2d at 790. If the
damage is clearly attributable to negligent acts of the agents of the governmental unit, there is no
liability under the rationale that damages from unintended and negligent acts result in no benefit to
the public. Texas Highway Dept. v. Weber, 219 S.W.2d 70, 72 (Tex. 1949). 
            The City reminds us of the three elements of negligence: (1) a legal duty; (2) a breach of that
duty; and (3) damages proximately resulting from that breach. Greater Houston Transp. Co. v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). The initial inquiry in a negligence action is whether a
duty existed. See id. The City contends that a police officer has a duty to prevent and suppress
suspected crime and to keep the peace in a manner that a reasonably careful police officer would use
in the same or similar circumstances. It admits that the officer involved violated that duty in seizing
Millard’s trailer, but refers us to the internal affairs investigation which concluded that the officer
had “erroneously impounded” the trailer. It characterizes this “mistake” as “negligence.”
            Millard counters that the taking was intentional. He focuses on the fact that he did not
consent to the taking of his property, that the police entered onto private property, and that his trailer
and its contents were removed under their direction. This, he concluded, was a purposeful act. In
looking solely to the allegations pled and accepting them as true, we agree.
            We begin by examining two cases in which the courts rejected the plaintiffs’ allegations of
an intentional taking. In A.C. Aukerman Co. v. State, 902 S.W.2d 576, 578 (Tex.App.--Houston [1st
Dist.] 1995, pet. denied), a case involving patent rights, the court found the plaintiff had not pled that
the State itself had appropriated the patent rights but that the State had obtained the benefits of the
patents. In a summary judgment context, the court found this insufficient to establish a taking by
the State as a matter of law because the plaintiff had failed to allege an intentional act by the State
which resulted in the taking of its property. Id. In Texas Highway Department v. Weber, 219
S.W.2d 70, 71 (Tex. 1949), the plaintiff alleged that his hay crop had been taken or damaged when
a fire set by Texas Highway Department employees spread to the crop and destroyed a substantial
part of it. The court found the damage occasioned by the fire was not necessarily an incident to, or
necessarily a consequential result of, the act of the employees in clearing the grass from the highway,
but that the spreading of the fire onto his premises was purely and solely the result of negligence. 
Id. Consequently, it could not be said that the hay crop was taken or damaged for public use. Id.            Here, Millard did not contend that the City obtained benefits from a third party’s taking of
his trailer or that the damage was merely consequential to another act of the City. He pled that the
City entered onto private property and purposefully took his trailer. Accordingly, the pleadings
allege a taking due to an intentional act by the City. 
Public Use?
            The Constitution limits compensation to damages “for or applied to public use.” Tex.Const.
art. I, § 17. What constitutes public use is a question for the court. Dyer v. Texas Electric Service
Co., 680 S.W.2d 883, 884 (Tex.App.--El Paso 1984, writ ref’d n.r.e.). A constitutional taking for
public use occurs only when there results to the public some definite right or use in the business or
undertaking to which the property is devoted. Borden v. Trespalacios Rice & Irrigation Co., 86
S.W. 11, 14 (Tex. 1905), aff’d by, 204 U.S. 667, 27 S.Ct. 785, 51 L.Ed. 671 (1907); Loesch v. Oasis
Pipe Line Co., 665 S.W.2d 595, 597 (Tex.App.--Austin 1984, writ ref’d n.r.e.). The trend in Texas
leans toward defining public use in terms of the general benefit to the State. Dyer, 680 S.W.2d at
885, citing Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 85
(1940). Except in isolated instances, judicial decisions have narrowed the meaning of “public use”
to those situations in which the damages are incident to the construction and operation of a public
work. Steele, 603 S.W.2d at 790. In Steele, the plaintiffs were away when escaped convicts hid out
in their house. Id. at 789. Police discharged incendiary material into the residence in a manner
designed to cause, and with the intent to cause, the residence to catch fire. Id. The Steeles sued,
alleging they were entitled to compensation. Id. at 788. However, the court found that judicial
restraints limited the damages that were compensable. Id. at 790. Whether property was destroyed
for public use could be established by proof that the City ordered the destruction because of a real
or supposed public emergency to apprehend armed and dangerous men who had taken refuge in the
house. Id. at 792. Similarly, “public use” may include matters of public health and safety, including
unsafe buildings which constitute nuisances. City of Houston v. Crabb, 905 S.W.2d 669, 674
(Tex.App.--Houston [14th Dist.] 1995, no pet.).
            In searching the El Paso Municipal Code, we find provisions declaring junked vehicles public
nuisances if they: (1) are located in a place where they are visible from a public place or public
right-of-way and (2) are detrimental to the safety and welfare of the general public, (3) tend to reduce
the value of the private property, (4) invite vandalism, (5) create fire hazards, (6) constitute an
attractive nuisance creating a hazard to the health and safety of minors, and (7) are detrimental to the
economic welfare of the City by producing urban blight adverse to the maintenance and continuing
development of the city. El Paso Municipal Code § 9.08.010 (2003). Junked vehicles are defined
as motor vehicles, truck-tractors, trailers and semitrailers that (1) do not have a lawfully attached
unexpired license plate or a valid motor vehicle inspection certificate; (2) are wrecked, dismantled,
or discarded; (3) are inoperable or have remained inoperable for more than seventy-two hours if on
public property or thirty consecutive days if on private property. El Paso Municipal Code §
9.08.020 (2003). Section 9.08.030 allows removal of a junked vehicle to abate a public nuisance. 
El Paso Municipal Code § 9.08.030 (2003). 
            Millard’s trailer would have qualified as a junked vehicle. It was a trailer that may be
transported upon a public highway; it bore unknown expired Michigan plates; and it was inoperable
due to a flat left rear tire. See El Paso Municipal Code § 9.08.020. The presence of the trailer
apparently invited vandalism since it had already been vandalized by gang-related graffiti which
would qualify the trailer as a public nuisance. See El Paso Municipal Code § 9.08.010. Therefore,
the taking of the trailer falls within one of the limited exceptions to the requirement that the public
use be one of construction or maintenance of public works. Again taking the allegations in the
petition as true, Millard has demonstrated that his trailer was towed for “public use” because it was
removed to abate a public nuisance due to gang-related graffiti. See Tex. Const. art. I, § 17. 
            Because we conclude that Millard properly pled an intentional act by the City which resulted
in a taking of his property for public use under Article 1, section 17, we overrule Point of Error One. 
The judgment of the trial court is affirmed.


July 29, 2004                                                               
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.