Opinion filed May 18, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed May 18, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00031-CV 

                                                     __________

 

                                RICHARD
EVATT ET AL, Appellants   

 

                                                             V.

 

                TEXAS
DEPARTMENT OF TRANSPORTATION, Appellee 

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                  Trial
Court Cause No. 7,036-D

 



 

                                             M
E M O R A N D U M   O P I N I O N

 

This appeal arises from a lawsuit filed by
ninety-six homeowners whose homes were damaged by flood waters.  The homeowners contend that their homes were
flooded as a result of the construction methods implemented by the Texas
Department of Transportation (the Department) on a nearby highway construction
project.  The homeowners assert that the
property damages they incurred constituted a Ataking@ without compensation in violation of Tex. Const.
art. I, ' 17.   The trial court granted the Department=s plea to the jurisdiction and
dismissed the homeowners=
inverse condemnation claim.  We affirm.








                                                               Background
Facts

The homes that are the subject of this appeal are
located in the Brookhollow and River Oaks subdivisions of Abilene.  A flood occurred in these areas of Abilene on
July 6, 2002.[1]  At the time the flood occurred, the
Department was performing a construction project on a highway located adjacent
to these subdivisions.  The Department
placed large concrete barriers on the highway to divide traffic lanes during
the construction.  The homeowners fault
the Department for using barriers that did not have an opening at the bottom
which would permit water to pass through the barriers.  They contend that the barriers constituted a
solid wall or dam which impounded water on top of the adjacent highway.  The homeowners alleged that their homes
flooded when two of the barriers separated, Aallowing
a large wall of water to escape from the dam created by the concrete barriers
[that slammed] into the damaged area with great velocity.@ 
In making these allegations, the homeowners asserted that their homes
had never flooded before this occasion.

The homeowners filed suit against the Department
on January 21, 2003.  In addition to
their takings claim, they also asserted statutory claims under the Texas Tort
Claims Act,[2]
the Texas Water Code,[3]
and the Texas Transportation Code[4]
in their initial pleading.  The
homeowners subsequently dropped these statutory claims.  Accordingly, we only consider the homeowners= takings claim in this appeal.  








                                                                 Issues
on Appeal

The homeowners raise two issues on appeal.  In their first issue, they assert that the
trial court erred in granting the Department=s
plea to the jurisdiction.  The homeowners
assert in their second issue that the trial court erred by failing to permit
them to amend their pleadings before dismissing their claims.  

                                                              Standard
of Review

Under the doctrine of sovereign immunity, the
state and its agencies cannot be sued in the courts of Texas without the
consent of the state in the form of a constitutional or statutory
exception.  Tex. Dep=t of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 224 (Tex. 2004); Tex. Dep=t
of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); Lowe v. Tex. Tech
Univ., 540 S.W.2d 297, 298 (Tex. 1976); Tex. Highway Dep=t v. Weber, 219 S.W.2d 70 (Tex.
1949); Hosner v. De Young, 1 Tex. 764, 769 (1847).   Sovereign immunity includes two distinct
principles:  immunity from suit and immunity
from liability.  Miranda, 133
S.W.3d at 224; Jones, 8 S.W.3d at 638. 
Sovereign immunity from suit deprives a trial court of subject matter
jurisdiction and, thus,  is properly
asserted in a plea to the jurisdiction.  
Miranda, 133 S.W.3d at 224-26; Jones, 8 S.W.3d at
637-38.  Whether a court has subject
matter jurisdiction is a question of law. 
Miranda, 133 S.W.3d at 226; Tex. Natural Res. Conservation
Comm=n v. IT‑Davy,
74 S.W.3d 849, 855 (Tex. 2002).  








The Department sought the dismissal of the
homeowners= lawsuit
on the basis that they did not sufficiently allege a claim for which the state
had waived sovereign immunity.  When a
plea to the jurisdiction challenges the pleadings, we determine if the pleader
has alleged facts that affirmatively demonstrate the court=s jurisdiction to hear the cause.  Miranda, 133 S.W.3d at 226; Tex.
Ass=n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  Whether a pleader has alleged facts that
affirmatively demonstrate a trial court=s
subject matter jurisdiction is a question of law reviewed de novo.  Miranda, 133 S.W.3d at 226.  We construe the pleadings liberally in favor
of the plaintiffs and look to the pleaders=
intent.  Id.   If the pleadings do not contain sufficient
facts to affirmatively demonstrate the trial court=s
jurisdiction but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiffs
should be afforded the opportunity to amend. 
Miranda, 133 S.W.3d at 226-27; County of Cameron v. Brown,
80 S.W.3d 549, 555 (Tex. 2002).  If the
pleadings affirmatively negate the existence of jurisdiction, then a plea to
the jurisdiction may be granted without allowing the plaintiffs an opportunity
to amend.  Id.

                                                                        Analysis

Article I, Section 17, of the Texas Constitution
provides that A[n]o
person=s
property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person.@

At
the heart of the takings clause lies the premise that the government should not
force some people alone to bear public burdens which, in all fairness and
justice, should be borne by the public as a whole. A taking under this
provision may be physical or regulatory. 
A physical taking may occur when the government physically appropriates
or invades private property, or unreasonably interferes with the landowner=s right to use and enjoy it. When the
government takes private property without first paying for it, the owner may
recover damages for inverse condemnation. 

 

Tarrant Reg=l
Water Dist. v. Gragg, 151 S.W.3d 546, 554 (Tex. 2004)(citations and
quotations omitted).  The Texas Supreme
Court recently redefined the standards for establishing a takings claim in Gragg
and City of Dallas v. Jennings, 142 S.W.3d 310 (Tex. 2004).[5]  The court=s
decisions in these cases significantly affect the issues in this appeal.  

Gragg and Jennings both involved
flooding alleged to have been caused by governmental entities.   Gragg involved a claim of inverse
condemnation based upon the manner in which a water district released water
from the newly constructed Richland-Chambers Reservoir  in East Texas.  151 S.W.3d 549-50. The Tarrant Regional Water
District built the reservoir in 1987 on the Trinity River approximately eight Ariver miles@
upstream from the Gragg Ranch.  Id.  The Gragg Ranch included seventeen miles of
river frontage along the Trinity River.  Id.  After a heavy rain occurring in March 1990,
the water district released water from the reservoir=s
floodgates into the Trinity River for the first time.  Id. 
The Gragg Ranch suffered extensive flood damage for the first time in
history as a result of the release of water from the reservoir.  Id. 
The Gragg Ranch suffered additional flood damage in the following years
from water releases from the reservoir.  Id.  








The water district asserted that it could not be
liable under the takings clause because the flood damage that the Gragg Ranch
suffered resulted from negligence.  Id.
at 551.  The supreme court recognized in Gragg
that mere negligence that eventually contributes to property damage does not
amount to a taking.  Id. at 554; see
City of Tyler v. Likes, 962 S.W.2d 489, 505 (Tex. 1997).  The court stated as follows in this regard:

Over
the years, we have articulated the standard for a compensable physical taking
in various ways.  The cases reflect our
efforts to account for several concerns in drawing the line between mere
negligence and an unconstitutional taking. 
For one, we strive to avoid what would be an anomalous result if the
State, an entity otherwise generally entitled to immunity for negligence, were
subject to liability for something less than intentional behavior.  More importantly, though, we seek to ensure
that the public does not bear the burden of paying for property damage for
which it received no benefit.  As we have
noted, our Constitution provides for compensation only if property is damaged
or appropriated for or applied to public use. 
That is the factor which distinguishes a negligence action from one
under the constitution for destruction. 
Accordingly, we have sought objective indicia of intent in
particular contexts to determine whether property has been taken or damaged in
furtherance of the public interest.

 

Gragg, 151 S.W.3d at 554-55 (emphasis added)(citations and
quotations omitted).  Thus, the supreme
court recognized that only an intentional act by a governmental entity will
give rise to a claim for inverse condemnation under the takings clause.

The supreme court outlined the requisite elements
of an intentional taking claim in Jennings.  The claimants in Jennings brought suit
for damages they sustained when their home was flooded with raw sewage as a
result of the city=s sewer
system backing up.  142 S.W.3d at 311‑12.  The material issue which the court resolved
in Jennings centered on the type of intent needed to establish a claim
of unconstitutional taking as a result of damage to one=s
property.  Id. at 313.   The claimants argued that a taking occurs if
the governmental entity intentionally performs the act which causes the
damage.  Id.  The governmental entity asserted in Jennings
that the relevant question is whether the government intended to damage the
property, not whether it merely intended to take an action that accidentally
resulted in such damage.  Id.   The supreme court resolved this issue by
holding that: 








[W]hen
a governmental entity physically damages private property in order to confer a
public benefit, that entity may be liable under Article I, Section 17 if
it (1) knows that a specific act is causing identifiable harm; or (2) knows
that the specific property damage is substantially certain to result from an
authorized government action ‑ that is, that the damage is necessarily an
incident to, or necessarily a consequential result of the government=s action. 

 

Id. at 314 (citations and quotations omitted); see
Coyne v. Kauffman County, 144 S.W.3d 129, 133 (Tex. App.CEastland 2004, no pet.).  

The court in Gragg summarized the standard
adopted in Jennings as follows: Awe
hold the requisite intent is present when a governmental entity knows that a
specific act is causing identifiable harm or knows that the harm is
substantially certain to result.@  151 S.W.3d at 555.   As applied to the circumstances in this
case, the Department would only have liability under the takings clause if it
either knew or was substantially certain that the use of the concrete barriers
would cause the homeowners=
homes to flood.  The homeowners attempted
to comply with the Jennings standard 
by alleging that the Department intentionally placed the concrete
barriers on top of the adjacent highway. 
This allegation of intentional conduct, standing alone, is insufficient
to allege a takings cause of action.   As
noted by the supreme court in Jennings: 


We
do not agree with the plaintiffs=
contention that any intentional act can give rise to liability for an
intentional taking. Such a standard would hold the government entity Ato a higher liability than a private
person engaging in the same acts.@  Houston v. Renault, Inc., 431 S.W.2d
322, 325 (Tex.1968).   Such a requirement
would also ignore the predicate of Article I, Section 17:  that the damage be Afor
or applied to public use.@   When damage is merely the accidental result
of the government=s act,
there is no public benefit and the property cannot be said to be Ataken or damaged for public use.@ Texas Highway Dep=t v. Weber, 147 Tex. 628, 219
S.W.2d  70, 71 (1949) (emphasis added); Steele
v. City of Houston, 603 S.W.2d 786, 791‑92 (Tex.1980).

 

142 S.W.3d at 313-14.  The homeowners have not alleged that the
Department either knew or was substantially certain that their homes would
flood as a result of the construction methods utilized by the Department on the
nearby construction project.  As a result
of this omission, we conclude that the homeowners have not sufficiently alleged
a takings claim.  

The Department contends that the homeowners cannot
plead a takings claim in good faith under the circumstances present in this
appeal.  The Department bases this
assertion on the fact that only a single flooding event occurred.  We agree. 
The supreme court made the following observation in Gragg with
regard to the application of the Jennings standard in the case of damage
caused by flood:








In
the case of flood‑water impacts, recurrence is a probative factor in
determining the extent of the taking and whether it is necessarily incident to
authorized government activity, and therefore substantially certain to
occur.  See Brazos River Auth. v. City
of Graham, 163 Tex. 167, 354 S.W.2d 99, 107 (1961).  While nonrecurrent flooding may cause damage,
a single flood event does not generally rise to the level of a taking.  See id. at 108.  The recurrence requirement assures that the
government is not held liable for taking property when a project=s adverse impacts, and by implication
its benefit to the public, are too temporal or speculative to warrant
compensation.  See id.

 

151 S.W.3d at 555.  Thus,
the general rule is that a single flood event does not rise to the level of a
taking.  The underlying facts in this
appeal necessitate the application of this general rule.  There is no dispute that the rain which
caused the flooding of the homeowners=
homes was of record proportions.  Given
the anomalous amount of rainfall which produced the flooding that is at issue
in this case, it would be impossible for the homeowners to allege in good faith
that the Department knew or was substantially certain that their homes would
flood as a result of the adjacent highway construction.  Accordingly, the trial court did not err in
granting the Department=s
plea to the jurisdiction.  The homeowners= first issue is overruled.  

The homeowners allege in their second issue that
the trial court erred in dismissing their lawsuit without giving them an
opportunity to amend their pleadings.  See
Miranda, 133 S.W.3d at 226-27.  As
noted previously, if the pleadings affirmatively negate the existence of
jurisdiction, then a plea to the jurisdiction may be granted without allowing
the plaintiffs an opportunity to amend.  Id.  We determined in the preceding paragraph that
the homeowners=
pleadings affirmatively negate the existence of subject matter
jurisdiction.  Thus, the trial court was
not required to provide the homeowners with an opportunity to amend their
pleadings prior to dismissing their lawsuit.








Moreover, we disagree with the homeowners= contention that they were not provided
with an opportunity to amend their pleading prior to dismissal.  The trial court conducted a hearing on the
Department=s plea to
the jurisdiction on September 24, 2004. 
At the time that the hearing occurred, the homeowners= live pleading consisted of their
second amended petition which they filed on the day before the hearing
(September 23, 2004).  The homeowners
filed a third amended petition on October 26, 2004, prior to the trial court=s entry of its order granting the plea
to the jurisdiction on October 28, 2004.[6]  Accordingly, the homeowners amended their
pleadings in response to the Department=s
plea to the jurisdiction on at least two occasions.  The supreme court noted in Harris County
v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004) that A[i]f
a plaintiff has been provided a reasonable opportunity to amend after a
governmental entity files its plea to the jurisdiction, and the plaintiff=s amended pleading still does not
allege facts that would constitute a waiver of immunity, then the trial court
should dismiss the plaintiff=s
action.@  Since the homeowners had a reasonable
opportunity to amend their pleadings in response to the Department=s plea to the jurisdiction, the trial
court did not have to provide them with another opportunity to amend their
pleadings.  We believe it is significant
to note in this regard that the homeowners have not identified any additional
matters which they would have alleged in an additional pleading.  The homeowners=
second issue is overruled.

                                                               This
Court=s Ruling

The order of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

May 18, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











[1]The event records of the National Climate Data Center
describe the flood as follows:

 

The tropical
wave that had plagued south central Texas over the past several days moved to
the north on the morning of the 6th. 
Thunderstorms moved into Taylor County around 3 AM.  Rainfall rates of 2 to 3 inches per hour
produced rainfall amounts of up to 12 inches in the southern portions of the
county.  A fire station on the south side
of Abilene reported 5.2 inches of rain in less than 2 hours.  The automated weather station at the Abilene
airport reported 4 inches in 2 hours. 
This rainfall produced flooding of low water crossings and some creek
flooding during the morning in Abilene. 
Worse flooding was yet to come however, as the heaviest rains occurred
to the south of Abilene, in the Buffalo Gap, Tuscola, Ovalo and Lake Abilene
areas.  Water from these areas flowed in
the Elm Creek, Cat Claw Creek, and Ceader [sic] Creek, then into the city of
Abilene.  Cat Claw Creek, and Elm Creek
crested at record levels on the evening of the 6th.  The flood waters did not recede significantly
until the evening of the 7th.  Around
1000 residents had to evacuate to higher ground.  The flooding throughout the county resulted
in significant property damage with 31 homes destroyed, 339 receiving major
damage, and 322 received minor damage.





[2]See Tex. Civ. Prac. & Rem. Code Ann. '' 101.001-.109 (Vernon 2005 & Supp. 2005).

 





[3]See Tex. Water Code Ann. ' 11.086 (Vernon 2000).





[4]See Tex. Transp. Code Ann. ' 201.611 (Vernon 1999).





[5]The supreme court issued its opinions in Gragg
and Jennings on the same day: June 25, 2004.  The trial court conducted a hearing on the
Department=s plea to the jurisdiction on September 24, 2004.  The parties addressed the holdings in Gragg
and Jennings in documents filed with the trial court prior to the
hearing.





[6]The homeowners contend that their second amended
petition constitutes their live pleading for the purposes of this appeal.  However, the homeowners reference the
allegations contained in their third amended pleading in their appellate
briefs.  We have reviewed the allegations
contained in both of these pleadings in deciding the issues.