Lue A. SMITH, Appellant,

v.

HARRISON COUNTY, Texas, Appellee.

No. 6–91–065–CV.

Court of Appeals of Texas, Texarkana.

Feb. 11, 1992.

Roger D. Bush, Marshall, for appellant.

Kenneth W. Hill, Marshall, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Lue Anne Smith is appealing from a take-nothing judgment granted in favor of Harrison County in a bench trial. She sought damages based upon inverse condemnation.

Smith contends that the trial court erred in granting a directed verdict because it failed or refused to recognize both her election to proceed in inverse condemnation rather than rescission or reformation and her probative evidence on all essential elements of inverse condemnation.

During the spring of 1989, Harrison County began looking for land on which to erect a county radio transmission tower. By April, the search had focused on a tract owned by Lue Anne Smith. Smith's land was desirable because it had an elevation of 580 feet in a county where the average elevation is about 350 feet.

The county commissioners discussed and debated the land purchase at four consecutive meetings, beginning on April 18. At the first meeting, Roger Bush, who was representing Smith, mentioned his concern that the tract should be used only for tower purposes and that the road to the tract should remain semi-private.[1] At this meeting, the commissioners also discussed a tract of land owned by Clay Allen as an alternative to the Smith tract.

At the next meeting, the commissioners were still considering both the Smith and Allen properties. Bush asked if the County would consider an installment sale. Judge Sandlin replied, "Well we're still looking to purchase but like we said, we're open to anything. We will talk with you on the terms and what we can do and with what's possible."

Irvin Gates, who had been scouting possible tower sites for the County, was unable to attend the following week's meeting, so nothing was done then, except to narrow the selection down to the Smith and Allen properties. There was, however, an extended discussion of the merits and problems of erecting a tower on the Allen property.

1. The transcript of the meeting reflected the following exchange:

Mr. Bush: I think we have mentioned that one of our concerns is that use is going to be restricted to the tower and the road will be semi-private. The road would just be used for right-of-way for maintenance rather than a toxic waste dump.

Commissioner Mooney: Is there any problem with that?

Judge Sandlin: No. How many acres.

Finally, at the fourth meeting, Gates reported that it would be too expensive to build a road to the Allen property. Commissioner Powers then made a formal motion: "Judge, I move that we purchase Mr. Bush's property as outlined in previous meetings, about ten of them I think." The commissioners voted to purchase the Smith land "as previously set forth in previous meetings at $4,500 per acre for a purchase price of $22,500." [2]

Smith signed a warranty deed conveying the property to the County. This deed contained a clause providing that the property would not be used as a landfill, dumping ground, or waste collection area for a term of fifteen years. In a separate deed, Smith conveyed a permanent right-of-way over a twenty-foot wide strip of land running from County Road 449, at the north end of her property, to the bottom of the tract. About a year later, Smith filed this suit alleging inverse condemnation.

Irvin Gates was Smith's first witness at trial. Gates participated on behalf of the commissioner's court in the fact finding and early negotiations, but was not an employee or official of the County. He testified that Bush had told him that Smith wanted the road kept as private as possible and the land used only for radio tower purposes for a period of twenty-five years; that he, Gates, passed "those thoughts" on to one of the commissioners; and that he, Gates, was surprised that Bush was not furnished with copies of the deeds prior to Smith's signing them. Gates testified that in addition to the presentations in the commissioner's court meetings, there were other discussions.

Lue Anne Smith testified that two men, whom she described as officials representing the County, brought the deeds for her to sign. The men were never identified. She testified that these men told her that, although Bush had requested that the land be restricted to radio tower use for twenty-five years, the County would agree to a restriction of no longer than fifteen years,

and that she consented to that change. (The actual restriction contained in the deed was that the property would not be used as a landfill, dumping ground, or waste collection area for fifteen years). She testified that she was assured that the other provisions in the deeds were exactly as Bush had previously negotiated them for her and that she would not have signed the deed had she not been told that it was what Bush had negotiated.

Smith admitted that she was not forced to sign the deeds; that she received $22,500 for the property; that she had an opportunity to review the deeds before she signed them; and that she did not ask, prior to signing the papers, to have copies made for Bush to look over.

Bush testified, in narrative form, that he was not provided with copies of the deeds, nor were they read to him over the telephone; that he had told Gates that he wanted to see the deeds before Smith signed them; that it was his understanding that the property was to be restricted to radio tower use; and that the warranty deed and the right-of-way deed do not reflect the terms and conditions that Smith agreed to.

At the end of this testimony, the trial court granted judgment in favor of the County.

Smith originally had three points of error on appeal but has since withdrawn two of them. In her remaining point, Smith complains that the trial court failed or refused to recognize both her election to proceed in inverse condemnation and her probative evidence of inverse condemnation.

The main thrust of Smith's evidence was to show that the deeds did not conform to an agreement previously reached by the parties. Smith contends that the deeds conveyed more property rights than she had agreed to convey. Thus, Smith seeks damages in the form of additional compensation, presumably in quantum meruit, for the unbargained for value conveyed. Her damages would consist of the difference in

2. This language was taken from Plaintiff's Exhibit 5, which was represented as a transcript of the commissioner's court meeting of May 8.

The statement of facts shows that Plaintiff's Exhibit 5 was admitted into evidence but refers to it as a letter.

value of the property with the limitations and reservations that she contends the parties agreed upon and the value of the property as it was actually conveyed by the deeds. Specifically, this would include (1) the difference in the value of the property restricted to radio tower use only, as opposed to the value of the property with only the restriction concerning the use of the property as a landfill, dumping ground, or waste collection area for fifteen years; (2) the value of the minerals under the property, which she contends that she did not intend to convey; (3) the difference in the value of the use of the right-of-way only for radio tower purposes, as opposed to a general use of the right-of-way; and (4) any diminution in value of her adjoining land because of this additional unrestricted use.

In accordance with an agreement by the parties, the trial was bifurcated; the court heard only the evidence on liability at this hearing with evidence on damages to be presented later if liability was found.

 We must first determine if Smith can obtain the damages under her inverse condemnation theory. Inverse condemnation is a broad term used to describe a taking of private property for public use without compensation, formal condemnation proceedings, or the consent of the owner. In such cases, compensation may be recovered by an action in the nature of a damage suit. *See Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (1961).

 In her pleadings, Smith specifically elected the remedies at law rather than the equitable remedies of rescission, reformation, or injunction. A defrauded party may elect to accept the situation and recover damages. *Carruth v. Allen,* 368 S.W.2d 672 (Tex.Civ.App.—Austin 1963, no writ).

 Smith did not use the term *fraud* in her allegations, but her factual contentions include the elements of fraud: that the County represented to her that the deeds

reflected the negotiated provisions of the transaction when in fact they did not; that she relied upon these representations in signing the instruments; and that she was damaged thereby. This amounts to allegation of fraud, and Smith could elect to seek damages instead of cancellation or reformation.

 We have found no cases in which an inverse condemnation action was used to complain that a deed was obtained fraudulently and did not reflect the parties' prior agreement. Article I, § 17 of the Texas Constitution prohibits the taking of property by a governmental entity without adequate compensation or consent. Thus, the fraudulent taking of a person's property by a governmental entity without adequate compensation or consent constitutes inverse condemnation. In the present case, this would apply to the portion of property interest that Smith contends was not bargained for or paid for but was obtained by fraud.

The trial judge's oral comment prior to rendering judgment suggests that he refused to recognize Smith's election to seek damages under a theory of inverse condemnation rather than rescission or reformation. The judge stated, "Well, nothing in the pleading that indicated that the Plaintiff offers to tender back any part of the consideration paid her. There's nothing in the pleadings that ask for reformation of the deed. It is therefore ordered adjudged and decreed by this court that I find for the defendant in this case."

 In reviewing the case, this Court is not entitled to look at any comments the judge made at the close of a bench trial as a substitute for proper findings of fact and conclusions of law. *In the Interest of W.E.R.,* 669 S.W.2d 716 (Tex.1984). There are no findings of fact and conclusions of law in the record. Such findings and conclusions were not properly requested,[3] so the trial court is presumed to have made all findings of fact necessary to support its

---

**3.** Smith requested findings of fact and conclusions of law but did not file a notice of past due findings as required by Tex.R.Civ.P. 297. *See*

*Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254 (Tex.1984).

judgment and must be affirmed on any legal theory that is supported by the evidence. *Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986).

■ Smith seeks additional compensation for something which the deeds show she has already been compensated for. The warranty deed conveying the land recites that "Ten Dollars ($10.00) and other valuable consideration" was given. The right-of-way deed recites "Ten and No/100 Dollars ($10.00) and other good and valuable consideration." Smith acknowledged that she received $22,500, but she wants to avoid the effect of the deed recitals.

■ After delivery and acceptance, deeds are regarded as the final expression of the agreement of the parties and the sole repository of the terms on which they have agreed. *Sunderman v. Roberts,* 213 S.W.2d 705 (Tex.Civ.App.—San Antonio 1948, no writ). Deeds are strong presumptive evidence of an intention to pass title in accordance with their recitals. *Jones v. Jones,* 181 S.W.2d 988 (Tex.Civ.App.—Dallas 1944, writ ref'd w.o.m.) An exception, however, to the binding effect of the terms of the deed is when fraud has been committed. Unless Smith proves fraud or misrepresentation, she is conclusively bound by the terms of the deed, even if she did not in fact know what they were. *See Dilger v. Dilger,* 271 S.W.2d 169 (Tex.Civ.App.—Amarillo 1951, no writ); *Farris v. Allstate Insurance Co.,* 265 S.W.2d 178 (Tex.Civ.App.—Fort Worth 1954, no writ).

■ Smith must not only prove that she relied upon a misrepresentation made by the County but also that such reliance was reasonable. *See Schonrock v. Taylor,* 212 S.W.2d 260 (Tex.Civ.App.—Austin 1948, writ ref'd). The reasonableness of a person's reliance on a particular representation is to be determined by the nature of the representation and circumstances surrounding the making of the representation. *Bell v. Henson,* 74 S.W.2d 455 (Tex.Civ.App.—Waco 1934, writ dism'd).

■ Smith had the burden of proof on all of these points, and as previously stated, without findings of fact and conclusions of law, we must uphold the trial court's judgment on any legal theory that is supported by evidence. The fact finder has the right to believe or disbelieve any part of the evidence.

■ There was no evidence of any negotiation or discussion concerning the reservation of the mineral interest. In the absence of a prior severance of the mineral estate, it remains with the surface estate, and reference to the land includes both the surface and the minerals. *Zahn v. National Bank of Commerce of Dallas,* 328 S.W.2d 783, 792 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.).

■ As fact finder, the trial court could have rejected Smith's evidence that the instruments did not conform with the agreement or rejected the evidence on any facet of Smith's fraud presentation. Under the doctrine of merger,[4] the court could have determined that the deeds were the final agreement between the parties. The evidence indicates that the negotiation and discussions were numerous. This point of error is overruled.

At oral argument, Smith's attorney complained that, because the private road being used by the County to go to the tract does not stay within the straight line right-of-way strip, the County trespasses each time it uses the private road. Smith did not plead this at trial or in her points of error on appeal, so we cannot address this complaint.

The judgment of the trial court is affirmed.

---

**4.** *See Arkansas Oak Flooring Co. v. Mixon,* 369 S.W.2d 804 (Tex.Civ.App.—Texarkana 1963, no writ).