Firemen's Ins. Co. v. UT 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00480-CV






Firemen's Insurance Company of Newark, New Jersey and 


CIT Construction, Inc. of Texas, Appellants



v.



Board of Regents of the University of Texas System, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 92-14458, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







 Appellants CIT Construction Inc. of Texas and Firemen's Insurance Company of
Newark, New Jersey ("Plaintiffs") sued appellee Board of Regents of the University of Texas
System ("UT") for breach of contract, quantum meruit, and taking of property without
compensation in violation of article I, section 17 of the Texas Constitution. UT made a plea to
the jurisdiction asserting that its sovereign immunity from suit deprived the trial court of
jurisdiction. The trial court agreed and dismissed Plaintiffs' claims for want of jurisdiction. On
appeal, Plaintiffs challenge this dismissal on three grounds: legislative waiver of immunity from
suit on a contract; violation of the "open courts" provision of article I, section 13 of the Texas
Constitution; and proper pleading of a takings claim. We will affirm the trial-court judgment.



FACTUAL AND PROCEDURAL BACKGROUND


 In a plea to the jurisdiction, the trial court must base its decision solely on the
allegations in the plaintiff's pleadings. Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466,
469 (Tex. 1949); Huston v. Federal Deposit Ins. Corp., 663 S.W.2d 126, 129 (Tex.
App.Eastland 1983, writ ref'd n.r.e.). These factual allegations must be taken as true. Id. 
Accordingly, our description of the background of this controversy is gleaned primarily from
Plaintiffs' petition.

 In November 1986, UT contracted with CIT for construction of the Nuclear
Engineering Testing Laboratory located in Austin. CIT alleges that UT frustrated completion of
the building through changes to the specifications and scope of the project. Despite this
interference, UT certified the project as ninety-seven percent complete in October 1988. 
Thereafter, UT declared CIT in default and refused to pay the balance due under the contract.

 Following CIT's termination, its surety, Firemen's Insurance Company, attempted
to complete the project. Firemen's contends that UT also interfered with its work on the project
through similar changes in specifications requiring additional work. Firemen's alleges that despite
completing the project, UT refused to pay it over $630,000 in contract balances and additional
expenses. 

 CIT sued UT for breach of contract, quantum meruit, and unlawful taking of
property without compensation. UT challenged the jurisdiction of the trial court on the basis of
sovereign immunity from suit. Following a January 5, 1993 hearing, the trial court orally denied
UT's plea to the jurisdiction. Firemen's subsequently intervened in the case. In June 1994, UT
requested a rehearing on its plea to the jurisdiction, relying on our opinion in Green International,
Inc. v. State, 877 S.W.2d 428 (Tex. App.Austin 1994, writ dism'd by agr.). On rehearing, the
trial court dismissed all of Plaintiffs' claims against UT.

 On appeal, Plaintiffs challenge the trial court's dismissal on three grounds. 
Initially, Plaintiffs argue that the trial court erred because the Texas Legislature has waived UT's
immunity from suit by authorizing UT to enter into contracts. Additionally, Plaintiffs contend
that dismissal of the breach of contract and quantum meruit claims on immunity grounds violates
the open courts provision of article I, section 13 of the Texas Constitution. Finally, Plaintiffs
assert that sovereign immunity does not bar a takings claim under article I, section 17 of the Texas
Constitution and that they properly pleaded a takings claim.



DISCUSSION


A.  Sovereign Immunity from Suit

 Plaintiffs first assert that the trial court erred in dismissing the breach of contract
and quantum meruit causes of action because sovereign immunity does not bar such claims. They
contend that whenever the state enters a contract it waives both immunity from liability and
immunity from suit. We disagree.

 Plaintiffs' position runs squarely against our recent holding in Green that while the
state waives its immunity from liability when it enters into a contract, it retains its immunity from
suit. 877 S.W.2d at 432-33; see also Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 592
(Tex. App.Austin 1991, writ denied). Absent an allegation that the state has consented to be
sued, the trial court lacks jurisdiction over breach of contract and quantum meruit claims. Green,
877 S.W.2d at 433.

 Confronted with this controlling authority, Plaintiffs lodge two arguments. First,
Plaintiffs argue that their case is distinguishable from Green because they allege it was
"impossible" for them to obtain legislative consent to sue. Plaintiffs contend that, because this
is a plea to the jurisdiction of the trial court, we must accept this conclusion of impossibility as
true. Plaintiffs are incorrect. 

 In a jurisdictional challenge we accept the factual allegations as true. But we are
bound neither by the legal conclusions nor by any illogical factual conclusions that Plaintiffs draw
from the facts pleaded. See Salazar v. Morales, 900 S.W.2d 929, 932 n.6 (Tex. App.Austin
1995, no writ); Alford v. City of Dallas, 738 S.W.2d 312, 314 (Tex. App.Dallas 1987, no writ);
cf. City of Houston v. Deshotel, 585 S.W.2d 846, 849 (Tex. Civ. App.Houston [1st Dist.] 1979,
no writ). Plaintiffs' factual allegations are that: through the 1987 legislative session, the Texas
Legislature routinely granted consent to private citizens to sue the state for breach of contract;
beginning with the 1989 session, the legislature refused all but one request for consent to sue; and
this single consent was subsequently vetoed by the Governor. From these facts, the most that can
be reasonably inferred is, that it may well be difficult for a private citizen to obtain the
legislature's consent to waive the state's immunity from suit on a contract. Such facts do not,
however, support the conclusion that it is "futile" or "impossible," as Plaintiffs contend. (1)

 Unable to distinguish their situation from Green, Plaintiffs next contend that Green
was wrongly decided. We recognize that the supreme court has granted the application for writ
of error in Green. Nonetheless, until we receive guidance to the contrary, we stand by our
holding that the state's waiver of immunity from liability on a contract does not waive its
immunity from suit. Plaintiffs did not seek and do not have legislative consent to sue the state. 
Consequently, the trial court lacked jurisdiction over the contract and quantum meruit claims. 
Point of error one is overruled.



B. Open Courts

 Plaintiffs assert in their second point of error that the "open courts" provision of
the Texas Constitution requires that they be given an opportunity to litigate their contract and
quantum meruit claims. See Tex. Const. art. I, § 13. As with the issue of immunity from suit,
we directly addressed and rejected this argument in Green. After reciting the applicable test for
the open-courts provision, we held:


Sovereign immunity is a common-law doctrine; it preceded the current Texas
Constitution. Thus, we must read the open-courts provision in light of the pre-existing concept of sovereign immunity. We find no authority holding that the
open-courts provision was intended to abolish or limit sovereign immunity. 
Accordingly, Green "cannot complain of an unconstitutional deprivation of a
nonexistent common law vested right."


Green, 877 S.W.2d at 437 (quoting Stout v. Grand Prairie Indep. Sch. Dist., 733 S.W.2d 290,
297 (Tex. App.Dallas 1987, writ ref'd n.r.e.), cert. denied, 485 U.S. 907 (1988)). Again,
Plaintiffs attempt to distinguish their case from Green on the ground that they pleaded the
impossibility of obtaining consent. As discussed above, we find no merit in this contention. 
Consequently, we adhere to our view expressed in Green that the open-courts provision does not
abrogate the doctrine of sovereign immunity. Point of error two is overruled.



C. Article I, Section 17 "Taking"

 In point of error three, Plaintiffs contend the trial court erred in dismissing their
takings claim because sovereign immunity does not preclude such a claim and theirs was properly
pleaded. Plaintiffs are correct that sovereign immunity does not protect the state from a proper
article I, section 17 takings claim. See Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex.
1980); Green, 877 S.W.2d at 433. However, based on the factual allegations in their pleadings,
Plaintiffs have conclusively negated such a claim.

 To establish a takings claim, Plaintiffs must allege that the state intentionally
performed certain acts which resulted in a "taking" of property for public use. Green, 877
S.W.2d at 434. In their takings claim, Plaintiffs allege that UT fraudulently induced both CIT
and Firemen's into providing materials and labor with the specific intent of not paying for them. 
Further, they allege that "UT did not take CIT's and Firemen's property under a color of right
or pursuant to the Contract." Plaintiffs assert that this allegation of intentional action sufficiently
states a takings claim. However, it is this very factual allegation of fraudulent inducement that
conclusively negates a compensable taking. 

 A takings claim requires an intentional act of the state. Steele, 603 S.W.2d at 792;
Green, 877 S.W.2d at 434. Mere negligence is not a compensable taking. Steele, 603 S.W.2d
at 790; Green, 877 S.W.2d at 434. The question here, however, is whether an intentional tort,
such as fraudulent inducement, comes within the takings doctrine. We conclude it does not. 

 Our supreme court has held that a takings claim must be based on intentional state
action that is within its authority. See Steele, 603 S.W.2d at 792; State v. Hale, 146 S.W.2d 731,
737 (Tex. 1941). Only where the state has properly exercised its authority may the state be liable
under article I, section 17. Nussbaum v. Bell County, 76 S.W. 430, 432 (Tex. 1903); accord
Hale, 146 S.W.2d at 737. The supreme court described the contours of takings liability in
Nussbaum. The court held that "where this authority is properly exercised a county may be made
liable" under article I, section 17. Nussbaum, 76 S.W. at 432. However, "counties are not
responsible for damages caused by the neglects or wrongs committed by their officers. . . . In
[this] class of cases the county is not responsible, but the person through whose wrong or neglect
the damage occurred may be." Id. (emphasis added). Nussbaum thus distinguishes between a
compensable taking under article I, section 17 and a tort. Intentional action that is within the
authority of the state can be a taking. Unintentional acts of negligence or intentional acts that are
outside the authority of the state may be torts, but they are not takings. See id.; Hale, 146
S.W.2d at 737; see also Texas Highway Dep't v. Weber, 219 S.W.2d 70, 72 (Tex. 1949). But
see Smith v. Harrison County, 824 S.W.2d 788, 792 (Tex. App.Texarkana 1992, no writ).

 This distinction is also recognized by a host of federal authority interpreting the
Takings Clause of the Fifth Amendment. (2) In Adams v. United States, 20 Cl. Ct. 132, 137
(1990), investors in a failed investment banking firm sued the United States alleging that the CIA
converted their funds into intelligence revenues, thus constituting a compensable taking. In
rejecting this claim, the United States Claims Court held that to constitute a taking


the Government must have lawfully used its power in converting private property
to public use. Consequently, the Government official or agency that appropriated
private property must have acted within its authority. An unauthorized or unlawful
taking is not compensable under the fifth amendment, but is a claim sounding in
tort.


Id. (citations omitted) (emphasis added).

 Similarly, in Mac'Avoy v. The Smithsonian Institution, 757 F. Supp. 60 (D.D.C.
1991), the District Court for the District of Columbia rejected a takings claim by a plaintiff who
alleged that the Smithsonian unlawfully kept paintings owned by the plaintiff. In rejecting the
claim based on the pleadings, the court held:


A prerequisite to a claim under the Takings Clause is proof of the government's
lawful authority to take the property. Here, the plaintiff repeatedly asserts that the
Smithsonian took the property unlawfully and without lawful authority. The
plaintiff's claims, sounding in tort, do not fall within the scope of the Fifth
Amendment's Takings Clause.


Id. at 70; see also Eversleigh v. United States, 24 Cl. Ct. 357, 359 (1991); Golder v. United
States, 15 Cl. Ct. 513, 518 (1988).

 As in Adams and Mac'Avoy, Plaintiffs in the present case have pleaded facts that
specifically negate a takings claim. The allegation of fraudulent inducement pleads a tort, not a
taking. The trial court did not err in dismissing the claim, because Plaintiffs' petition
affirmatively negated a constitutional claim. See Green, 877 S.W.2d at 437. Point of error three
is overruled.


CONCLUSION


 Based on our holdings in Green, the trial court did not err in dismissing Plaintiffs'
contract, quantum meruit, and takings claims. Having overruled all points of error, (3) we affirm
the trial-court judgment.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: July 12, 1995

Publish

1.   We take judicial notice that on the last day of its regular session, the recently
adjourned Seventy-Fourth Legislature passed resolutions granting seven businesses
permission to sue the state for breach of contract. See Tex. S. Con. Res. 41, 74th Leg.,
R.S. (1995) (Tenneco Power Generation Co.); Tex. S. Con. Res. 52, 74th Leg., R.S. (1995)
(CW Systems, Inc.); Tex. S. Con. Res. 53, 74th Leg., R.S. (1995) (John R. Phenix &
Associates, Inc.); Tex. S. Con. Res. 93, 74th Leg., R.S. (1995) (Imagents, Inc.); Tex. S.
Con. Res. 104, 74th Leg., R.S. (1995) (MKK-North Star); Tex. S. Con. Res. 105, 74th Leg.,
R.S. (1995) (Green International, Inc.); Tex. S. Con. Res. 106, 74th Leg., R.S. (1995)
(Harbert Construction Co.).
2.   In interpreting our state constitution, it is appropriate to borrow from well-reasoned
and persuasive federal authority. Davenport v. Garcia, 834 S.W.2d 4, 20 (Tex. 1992).
3.   Appellant CIT also raises two general points of error alleging that UT "failed to
sustain its burden of proof" and that "disputed fact issues remain." Given our resolution
of the three substantive points of error, these additional points leave nothing for further
review and are summarily overruled. See Green, 877 S.W.2d at 437.


SPAN STYLE="font-family: CG Times"> In Adams v. United States, 20 Cl. Ct. 132, 137
(1990), investors in a failed investment banking firm sued the United States alleging that the CIA
converted their funds into intelligence revenues, thus constituting a compensable taking. In
rejecting this claim, the United States Claims Court held that to constitute a taking


the Government must have lawfully used its power in converting private property
to public use. Consequently, the Government official or agency that appropriated
private property must have acted within its authority. An unauthorized or unlawful
taking is not compensable under the fifth amendment, but is a claim sounding in
tort.


Id. (citations omitted) (emphasis added).

 Similarly, in Mac'Avoy v. The Smithsonian Institution, 757 F. Supp. 60 (D.D.C.
1991), the District Court for the District of Columbia rejected a takings claim by a plaintiff who
alleged that the Smithsonian unlawfully kept paintings owned by the plaintiff. In rejecting the
claim based on the pleadings, the court held:


A prerequisite to a claim under the Takings Clause is proof of the government's
lawful authority to take the property. Here, the plaintiff repeatedly asserts that the
Smithsonian took the property unlawfully and without lawful authority. The
plaintiff's claims, sounding in tort, do not fall within the scope of the Fifth
Amendment's Takings Clause.


Id. at 70; see also Eversleigh v. United States, 24 Cl. Ct. 357, 359 (1991); Golder v. United
States, 15 Cl. Ct. 513, 518 (1988).

 As in Adams and Mac'Avoy, Plaintiffs in the present case have pleaded facts that
specifically negate a takings claim. The allegation of fraudulent inducement pleads a tort, not a
taking. The trial court did not err in dismissing the claim, because Plaintiffs' petition
affirmatively negated a constitutional claim. See Green, 877 S.W.2d at 437. Point of error three
is overruled.


CONCLUSION


 Based on our holdings in Green, the trial court did not err in dismissing Plaintiffs'
contract, quantum meruit, and takings claims. Having overruled all points of error, (3) we affirm
the trial-court judgment.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: July 12, 1995

Publish

1.   We take judicial notice that on the last day of its regular session, the recently
adjourned Seventy-Fourth Legislature passed resolutions granting seven businesses
permission to sue the state for breach of contract. See Tex. S. Con. Res. 41, 74th Leg.,
R.S. (1995) (Tenneco Power Generation Co.); Tex. S. Con. Res. 52, 74th Leg., R.S. (1995)
(CW Systems, Inc.); Tex. S. Con. Res. 53, 74th Leg., R.S. (1995) (John R. Phenix &
Associates, Inc.); Tex. S. Con. Res. 93, 74th Leg., R.S. (1995) (Imagents, Inc.); Tex. S.
Con. Res. 104, 74th Leg., R.S. (1995) (MKK-North Star); Tex. S. Con. Res. 105, 74th Leg.,
R.S. (1995) (Green International, Inc.); Tex. S. Con. Res. 106, 74th Leg., R.S. (1995)
(Harbert Construction Co.).
2.   In interpreting our state constitution, it is appropriate to borrow from well-reasoned
and persuasive federal authority. Davenport v. Garcia, 834 S.W.2d 4, 20 (Tex. 1992).
3.   Appellant CIT also raises two general points of error alleging that UT "failed to
sustain its burden of proof" and that "disputed fact issues remain." Given our resolution
of the three substantive points of error, these additional points leave nothing for further
review and are summarily overruled.