**Reversed and Rendered and Opinion filed April 14, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00421-CV

---

## THE CITY OF WEBSTER, Appellant

### V.

## MARY JENNETTE JACKSON HUNNICUTT, Appellee

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 1135217**

---

### O P I N I O N

The issue presented in this interlocutory appeal is whether an individual who asserts she was coerced or fraudulently induced into deeding real property to a governmental entity can (1) assert a viable inverse-condemnation claim and (2) establish subject-matter jurisdiction for a claim against the governmental entity. Concluding that appellee Mary Jennette Jackson Hunnicutt's allegations against appellant City of Webster are founded on tortious behavior that negates an inverse-condemnation claim, we reverse the order of the trial court denying the

plea to the jurisdiction and render judgment dismissing Hunnicutt's claims for want of subject-matter jurisdiction.

## I. BACKGROUND[1]

Hunnicutt owned a two-thirds undivided interest in a 23.5-acre tract of land in the City of Webster fronting Interstate 45. Hunnicutt's brother, Clifford Jackson, owned the remaining one-third undivided interest in the 23.5-acre tract.

The City wished to develop the area around the interstate into a regional shopping and entertainment destination which included public roads to service the development. Hunnicutt alleges that the City desired to place a public road, or as her petition describes it, a "grand entrance," across a part of her 23.5-acre tract instead of across land owned by the City through its wholly-owned subsidiary Webster Economic Development Corporation. In November 2016, City employee Betsy Giusto visited Hunnicutt in her home with a deed prepared for Hunnicutt's signature, which proposed to convey 4.111 acres of Hunnicutt's 23.5-acre tract to the City. Hunnciutt describes that she was induced to sign the "deed conveying not only the approximate 2.6 acres needed for the grand entrance but also another 1.5 acres of land consisting of a pipeline easement and a five-foot strip of land south of the pipeline easement to vastly increase the value of the land owned by the City[.]"

Hunnicutt's petition alleges that even though the City and Giusto knew Jackson owned an interest in the 4.111 acres, Hunnicutt was told that Jackson's signature was not necessary. Her petition further alternatively alleges that Giusto assured her that if Jackson was not in agreement, then the deed would be voided. It is undisputed that the City never received a conveyance of Jackson's one-third interest in the 4.111-acre tract. It also undisputed that the City began construction

---

[1] *See Hunnicutt v. City of Webster*, No. 14–20–00222–CV (Tex. App.—Houston [14th Dist.] Feb. 17, 2022, no pet. h.) (*Hunnicutt I*).

2

of the public road on the 4.111 acres approximately two years later.

In 2018, Hunnicutt filed suit in Harris County district court asserting: (1) an inverse-condemnation claim against the City; (2) "an action for recission" of the deed; (3) an ultra-vires claim against Giusto; and (4) a request for declaratory relief against the City voiding Hunnicutt's conveyance of the 4.111 acres. Hunnicutt amended her district-court petition to remove the inverse-condemnation claim because that claim may only be brought in a county court at law in Harris County.[2] Tex. Gov't Code Ann. § 25.1032(c) ("A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, if the amount in controversy in a statutory proceeding does not exceed [$250,000] in civil cases.").

In June 2019, Hunnicutt and Jackson brought this suit against the City in the county civil court at law asserting a common-law inverse-condemnation claim based on the same facts, as well as seeking recission of the warranty deed. The City filed a plea to the jurisdiction arguing that Hunnicutt's "action for recission" was barred by governmental immunity and she had not pleaded a viable inverse-condemnation claim against the City. The trial court denied the plea to the jurisdiction, resulting in this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

## II.  ANALYSIS

In two appellate issues, the City argues that the trial court erred in denying its plea to the jurisdiction. In issue 1, the City argues Hunnicutt did not plead a viable inverse-condemnation claim. In issue 2, the City argues that Hunnicutt has

---

[2] Hunnicutt's remaining claims asserted in the district-court proceeding were challenged by the City and Giusto in a plea to the jurisdiction. The district court granted the plea to the jurisdiction and dismissed all Hunnicutt's and Jackson's claims in that proceeding. This court affirmed the judgment of the district court. *See Hunnicutt I.*

no recission claim because rescission is not a separate cause of action, but rather an equitable remedy.

The City does not dispute that Jackson's undivided one-third interest in the 4.111 acres was taken by the City when the City built the road and admits that Jackson is owed compensation. It is only Hunnicutt's claims against the City that are the subject of this appeal, and therefore Jackson is not an appellee in this appeal.[3]

## A.    Standard of review

A plea to the jurisdiction is a procedural vehicle used to challenge the court's subject-matter jurisdiction over a claim. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 232 (Tex. 2004). The standard of review of a trial court's ruling on such a plea is de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). In our review, we do not consider the merits of the underlying claim; we consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When a plea challenges the claimant's pleadings, we determine whether the claimant pleaded facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to

---

[3] Texas Rule of Appellate Procedure 3.1(c) defines an appellee as "a party adverse to an appellant." Unlike an appellant, which in civil cases Texas Rules of Appellate Procedure 3.1(a) and 25.1(c) generally require the filing of a notice of appeal that identifies the appealing party, an appellee need not be definitively identified until the appellant's brief is filed. An appellee, however, must be a party to the trial court's final judgment and must be someone against whom the appellant raises issues or points of error in the appellant's brief. *Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The City filed a plea to the jurisdiction only as to Hunnicutt's claims and confirmed both in the trial court and in its appellate briefing that Jackson is entitled to compensation for his inverse-condemnation claim.

affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the claimant should be afforded the opportunity to amend. *Id.* at 226–27. However, if the pleadings affirmatively negate the existence of jurisdiction, then we should render by granting the plea and dismissing for want of jurisdiction without allowing an opportunity to amend. *Id.* at 227.

The standard of review for a plea to the jurisdiction based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, we take as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* If the movant presents conclusive proof that the trial court lacks subject-matter jurisdiction, then the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction or the plea will be sustained. *See id.*

The City's plea challenged both the pleadings and the existence of jurisdictional facts.

## B. Inverse-condemnation claim

### 1. Hunnicutt did not plead a viable inverse-condemnation claim

Inverse-condemnation claims,[4] also referred to as "takings" claims, are rooted in the takings clause of the Texas Constitution—article I, section 17— which provides, in relevant part, that "no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation

---

[4] The action is referred to as inverse because the property owner initiates a common-law action to recover compensation for a taking that has already occurred instead of the government initiating a formal statutory proceeding to determine appropriate compensation for a prospective taking. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 567 (Tex. 2012).

being made, unless by the consent of such person." Tex. Const. art. I, § 17(a).[5] Because this cause of action is created by the Texas Constitution, a viable inverse-condemnation claim is not barred by common-law doctrines of sovereign and governmental immunity. *See Holland*, 221 S.W.3d at 643. However, if a plaintiff "cannot establish a viable takings claim" against a governmental entity, the claim would implicate immunity and potentially be barred by it. *Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013). A trial court should therefore grant a plea to the jurisdiction when a government defendant demonstrates or produces evidence to show as a matter of law that the plaintiff cannot establish a viable inverse-condemnation claim. *See A.P.I. Pipe*, 397 S.W.3d at 166; *Miranda*, 133 S.W.3d at 228.

As part of its arguments in issue 1, the City argues that Hunnicutt's pleadings negate her inverse-condemnation claim, because her pleadings allege a tort claim.[6] To plead a viable inverse-condemnation claim under Texas Constitution article I, section 17, Appellant must allege (1) an intentional act by the governmental entity under its lawful authority, (2) resulting in a taking or damaging of property, (3) for public use. *See Harris Cty. Flood Control Dist. v.*

---

[5] The United States Constitution also provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

[6] In so doing, the City advances new arguments on appeal in support of its position that Hunnicutt has not pleaded a viable inverse-condemnation claim. Ordinarily new issues may not be raised for the first time on appeal, though there is an exception for issues demonstrating an absence of subject-matter jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95–97 (Tex. 2012). In some circumstances, a challenge to subject-matter jurisdiction raised for the first time on appeal may deprive the plaintiff of the opportunity to amend its pleadings to cure defects or to develop the record with relevant evidence. *Id.* at 96. However, Hunnicutt responded substantively to the City's arguments on appeal, and Hunnicutt raised no issue requiring further development of the record or amendment of her pleadings. Because Hunnicutt's pleadings and response to the plea to the jurisdiction describe Giusto's conduct as consisting solely of tortious acts and intentional misrepresentations, we conclude that it is unnecessary to allow Hunnicutt a further opportunity to amend her pleadings. *Miranda*, 133 S.W.3d at 226–27.

*Kerr*, 499 S.W.3d 793, 799 (Tex. 2016); *State v. Hale*, 146 S.W.2d 731, 737 (Tex. 1941). Mere negligence is not a compensable taking. *Steele v. City of Houston*, 603 S.W.2d 786, 790–91 (Tex. 1980).

The supreme court has held that an inverse-condemnation claim must be based on intentional governmental action that is within the government's authority. *See Steele*, 603 S.W.2d at 791; *Hale*, 146 S.W.2d at 737. Only when the governmental entity has properly exercised its authority may it be liable under article I, section 17. *Nussbaum v. Bell County*, 76 S.W. 430, 432 (Tex. 1903). The supreme court described the contours of "takings" liability in *Nussbaum*. The court held that "where this authority is properly exercised a county may be made liable" under article I, section 17. *Id.* However, governmental entities "are not responsible for damages caused by the neglects or wrongs committed by their officers. . . . In [this] class of cases the [governmental entity] is not responsible, but the person through whose wrong or neglect the damage occurred may be." *Id. Nussbaum* thus distinguishes between a compensable taking under article I, section 17 and a tort. *See id.* Unintentional acts of negligence or intentional acts that are outside the authority of the state may be torts, but they are not takings. *See id.*; *see also Texas Highway Dep't v. Weber*, 219 S.W.2d 70, 72 (Tex. 1949) (recognizing distinction between cause of action for inverse condemnation and cause of action based on tort); *Firemen's Ins. Co. of Newark, N.J. v. Board of Regents of the Univ. of Tex. Sys.*, 909 S.W.2d 540, 543–44 (Tex. App.—Austin 1995, writ denied) ("The allegation of fraudulent inducement pleads a tort, not a taking."), *disapproved of on other grounds by Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *City of Richardson v. Cannon*, No. 05–18–00181–CV, 2018 WL 6845240, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) (plaintiff's allegations that city and its employees acted fraudulently negated takings claim).

The Texarkana Court of Appeals reached a different conclusion in holding the "fraudulent taking of a person's property by a governmental entity without adequate compensation or consent constitutes inverse condemnation." *Smith v. Harrison Cty.*, 824 S.W.2d 788, 792 (Tex. App.—Texarkana 1992, no writ). In so holding, the court noted it found no cases in which an inverse-condemnation action was used to complain that a deed was obtained fraudulently and did not reflect the parties' prior agreement. *Id.* In *Smith*, a landowner agreed to sell property to the county for a specific use, subject to certain conditions. *Id.* at 790–91. The county prepared the deed, which the landowner signed. *Id.* at 791. The landowner later discovered that the deed did not restrict the use of the property pursuant to the conditions she negotiated. The trial court rendered a take-nothing judgment on the landowner's claims following a bench trial. *Id.* at 791. Though ultimately the court of appeals affirmed the judgment of the trial court, concluding the factfinder could have determined the landowner did not meet her burden on her claims, the court speculated that the landowner would be entitled to compensation if she had met the requirements for fraud. We disagree with the conclusion of our sister court that the fraudulent taking of a person's property by a governmental entity constitutes inverse condemnation, because it cannot be reconciled with precedent which holds that an inverse-condemnation claim founded on tortious conduct cannot be maintained.

Hunnicutt responds to the City by arguing that she did not bring tort claims against the City. She maintains that her allegations in this lawsuit do not accuse the City of unlawful behavior, but instead allege that the City "intentionally took [Hunnicutt's] property for public use" without her consent and denied her access to the undivided two-thirds interest in the 4.111 acres of land that she owned but "received absolutely no compensation for this taking, much less adequate

8

compensation as required by the Texas constitution." However, the basis of Hunnicutt's taking claim is that she was fraudulently induced to sign the conveyance based on various "unfulfilled" promises, including the promise that if Jackson did not agree to convey his ownership of the property that the deed would be voided.[7] Hunnicutt alleges that she believed the deed she signed to be worthless. In her response to the plea to the jurisdiction, Hunnicutt describes the interaction as follows:

> Later that day, Giusto arrived at Mrs. Hunnicutt's house armed with a prepared warranty deed (the "Warranty Deed") and a City notary named Pam Guillory. At the meeting, Giusto made a number of promises and representations and used her relationship of trust to persuade and pressure Mrs. Hunnicutt. In addition, when Mrs. Hunnicutt hesitated and insisted that Mr. Jackson needed to sign a deed as well due to his ownership interest, Giusto promised Mrs. Hunnicutt that any conveyance of the land would be of no effect and would be worthless if Mr. Jackson refused to convey his ownership interest in property to the City. Giusto also told Mrs. Hunnicutt that the document was just a piece of paper that the mayor needed for an important meeting to show to some people. Mrs. Hunnicutt was never allowed the opportunity to discuss the Warranty Deed with her lawyer or Mr. Jackson. Eventually Mrs. Hunnicutt folded to Giusto's pressure and executed the Warranty Deed based upon the representations made by Giusto and the trust relationship. As she had been assured the Warranty Deed was worthless without Mr. Jackson's signature, Mrs. Hunnicutt did not understand that she had conveyed her interest in the property at the time she executed the Warranty Deed.

We conclude Hunnicutt's petition did not plead a viable inverse-condemnation claim because her allegations are premised on tortious or unlawful conduct on the part of Guisto rather than conduct within the lawful authority of the City. Without a viable inverse-condemnation claim, Hunnicutt's

---

[7] Hunnicutt also attached to her response to the plea to the jurisdiction a copy of her petition in the district-court case, which explicitly alleges fraudulent and unlawful behavior on the part of the City and Giusto in procuring the conveyance of the 4.111 acres from Hunnicutt.

petition does not support the subject-matter jurisdiction of the trial court. Therefore, we need not address the City's other appellate arguments under issue 1 that the deed is unambiguous and must be construed as a matter of law to establish consent and compensation.

## 2. The City was not precluded from challenging subject-matter jurisdiction

Notwithstanding her pleadings, Hunnicutt argues that the City judicially admitted that Hunnicutt has a viable inverse-condemnation claim, and that "it may not now dispute this fact."[8] The statements alleged by Hunnicutt to constitute a judicial admission were by made an attorney for the City during the hearing on the City's plea to the jurisdiction in the underlying district-court case in *Hunnicutt I*. In discussing whether the City was engaged in a proprietary function or governmental function for purposes of governmental immunity in the district-court case, the attorney for the City responded to a hypothetical from the court asking if Hunnicutt had any recourse if she was in fact "swindled," by stating "No, it's a takings claim." That response was part of a more extensive exchange between counsel and the court:

> **[Counsel for the City:]** And in addition to that, she could sue whoever did it for fraud, and there's an election of remedies under 101.06(f). And if you include the City, then it's include—your—your allegations, you're stuck with that. You're—it's against the City and the actual plaintiff under 101.106.
>
> **[Trial Court:]** So even though she gives the deed to the City, there's no way for her to undo it?
>
> **[Counsel for the City:]** No. It's—its;—the City's already taken it

[8] Hunnicutt specifically states that she does not argue the application of judicial estoppel, only the doctrine of judicial admission. Judicial estoppel is a "rule of procedure based on justice and sound public policy" that bars a party from taking a position inconsistent with one taken successfully in an earlier proceeding. *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008).

10

and [] constructed a street. And it's—that's a—that—if they have a claim, it's a takings claim.

In response, the City argues: (1) its counsel never admitted Hunnicutt had a viable claim; (2) a judicial admission must occur in the same proceeding and its counsel's statement was made in another proceeding; (3) the determination of a taking is question of law; and (4) subject-matter jurisdiction cannot be conferred by judicial admission.

A "true" judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc*., 606 S.W.2d 692, 694 (Tex. 1980). Testimonial declarations which are contrary to a party's position are quasi-admissions and constitute some evidence, but are not conclusive on the admitter unless they meet the following requirements: (1) the statement must be made in the course of a judicial proceeding; (2) it must be contrary to an essential fact or defense asserted by the party; (3) it must be deliberate, clear, and unequivocal; (4) it cannot be destructive of the opposing party's theory of recovery or defense; and (5) enforcing the statement as a judicial admission would be consistent with public policy. *See id.* Statements of fact made in other proceedings may also be received as an admission if they meet the legal requirements. *See Brown v. Lanier Worldwide, Inc*., 124 S.W.3d 883, 900 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Relying on *Lanier Worldwide*, Hunnicutt argues that a judicial admission may be from a party's counsel and need not be sworn. 124 S.W.3d at 900. *But see Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (unsworn statements of counsel generally do not constitute evidence). *Lanier Worldwide* is distinguishable as our opinion addressed a situation in which defense counsel represented to a Georgia court that his client was an existing entity and a party to the dispute. *See*

11

*Lanier Worldwide*, 124 S.W.3d at 829, 900. When the plaintiff in *Lanier Worldwide* attempted to domesticate the Georgia judgment in Texas, the defendant sought summary judgment on the basis that it was not an existing entity and not part of the dispute with the plaintiff. *See id*. Hunnicutt's argument attempts to expand our holding in *Lanier Worldwide*—that statements of material fact made by counsel in another proceeding, over which counsel had personal knowledge, were a judicial admission—to the facts here, which involve counsel's response to hypothetical questions from the trial court about a matter of law.

Statements made by a party or counsel in course of judicial proceedings that are not based on personal knowledge or are made by mistake or based on a mistaken belief of facts are not judicial admissions. *See generally Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 466 (Tex. 1969). Not only was the statement made by counsel for the City not "clear, deliberate and unequivocal," but the admission alleged to have been made concerned a question of law and not a material fact in the case. *See generally Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000); *Mendoza*, 606 S.W.2d at 694 ("A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it."). The admission alleged to have occurred is that Hunnicutt has a viable inverse-condemnation claim, which is a question of law and affects the subject-matter jurisdiction of the trial court. *See Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294–95 (Tex. 2001) ("A party cannot by his own conduct confer jurisdiction on a court when none exists otherwise."); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998) ("whether the facts are sufficient to constitute a taking is a question of law"); *see also American Title Co. v. Smith*, 445 S.W.2d 807, 809 (Tex. App.—Houston [1st Dist.] 1969, no writ)

12

("The parties to an action may not control the power of the trial court to apply the applicable rules of law to the facts in rendering his judgment by stipulations or admissions concerning the rules of law deemed to be applicable."). Furthermore, it is well-settled that parties cannot agree to the trial court's subject-matter jurisdiction over a claim. *See Texas Ass'n of Bus. v. Texas Air Control Bd*., 852 S.W.2d 440, 445–46 (Tex. 1993) (subject-matter jurisdiction cannot be waived and may be raised for the first time on appeal by the parties or court). Accordingly, we conclude that the statement by the City's counsel was not a judicial admission and did not preclude the City from challenging Hunnicutt's inverse-condemnation claim by asserting the trial court lacked subject-matter jurisdiction.

We sustain the City's issue 1.

## C.    Recission claim

In issue 2, the City argues Hunnicutt has no separate claim for recission.[9] Hunnicutt's petition included an "action to rescind the Warranty Deed" because no consideration was paid for the conveyance. Her petition maintained the deed failed for lack of consideration and no meeting of the minds.

Rescission is merely the "common, shorthand name" for the composite remedy of rescission and restitution. *Cruz v. Andrews Restoration, Inc*., 364 S.W.3d 817, 825 (Tex. 2012) (citing *Restatement (Third) of Restitution and Unjust Enrichment* § 54 cmt. a (Am. Law Inst. 2011)); *see also Italian Cowboy*

---

[9] The City appears to use the term "claim" interchangeably with "cause of action." *Black's Law Dictionary* defines a "claim" to include (1) [t]he assertion of an existing right; any right to payment or to an equitable remedy"; (2) an interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing." *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019). Hunnicutt asserted a claim to the equitable remedy of recission in her petition. In contrast, a "cause of action" is "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Cause of Action*, BLACK'S LAW DICTIONARY (11th ed. 2019). Both parties agree recission is not an independent cause of action.

*Partners v. Prudential Ins*., 341 S.W.3d 323, 344 (Tex. 2011) (rescission is a remedy). A party seeking rescission and restitution must first establish a substantive right to avoidance of the transaction in question. *See Restatement (Third) of Restitution and Unjust Enrichment* § 54 cmt. a (Am. Law Inst. 2011). Because Hunnicutt has not established a substantive right to relief against the City, she has no claim for the remedy of recission. We sustain the City's issue 2.

## III.   CONCLUSION

Having sustained the City's two issues, we hold the trial court reversibly erred in denying the City's plea to the jurisdiction on Hunnicutt's claims against it. We reverse the order of the trial court and render the judgment the trial court should have rendered, a dismissal of Hunnicutt's claims for want of subject-matter jurisdiction. Tex. R. App. P. 43.2(c).


/s/     Charles A. Spain
Justice

Panel consists of Justices Jewell, Spain, and Wilson.