IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00038-CV

 

The City of Midlothian, Texas,

                                                                                    Appellant

 v.

 

Letha Black,

                                                                                    Appellee

 

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 74216

 



Opinion



 

In this interlocutory appeal of the trial court’s
denial of the City of Midlothian’s (Midlothian) plea to the jurisdiction, we
decide if Texas Water Code section 11.086(a) expressly waives governmental immunity
for Appellee Letha Black’s water code violation claim and then consider her
alternative inverse condemnation claim.  We hold that Midlothian is immune and
that Black’s inverse condemnation claim was improperly pled.  We will reverse
the trial court’s ruling and remand the cause for dismissal against Midlothian for want of subject-matter jurisdiction.








Background

 

Black’s 11-acre tract of land is located near a
large creek in Midlothian.  Because Black’s property is adjacent to the creek,
for many years the natural drainage of the land brought rainwater down and across
her property, through a shallow gully that ultimately emptied into the large
creek.  Due to the rainwater drainage, Black fortified a portion of her driveway
that crossed the area where the rainwater naturally drained with concrete and
three culverts.

In 2005, 90 Spring Creek, L.P., the co-defendant
developer, began construction of Spring Creek, a residential subdivision.  Midlothian approved the developer’s subdivision plan and made inspections during construction. 
In connection with the subdivision, the developer constructed a drainage
detention pond on private property within the subdivision to hold water
collected from the subdivision’s storm water drainage system.  Midlothian
entered into an agreement concerning the drainage detention pond, which gave Midlothian authority to inspect the operation and use of the pond.  Black alleged that
after the detention pond was built, larger and stronger volumes of water began
running over her property during heavy rains, causing erosion and damage to the
concrete portion of her driveway.  She sued Midlothian, the developer, and the
contractor who built the detention pond for damage to her property.  

After the trial court denied Midlothian’s plea to
the jurisdiction, the city appealed.  See Tex. Civ. Proc. & Rem. Code Ann. § 51.014(a)(8).




Immunity from Suit

Midlothian’s
second issue[1] argues
that Black’s claim against it under section 11.086 of the Water Code is barred
by governmental immunity and that its immunity has not been waived because
there is no clear and unambiguous language in the Water Code that evidences
legislative intent to waive immunity.

Section 11.086 provides,

(a)  
No person may divert or
impound the natural flow of surface waters in this state . . . in a manner that
damages the property of another by the overflow of the water diverted or
impounded.

 

(b)  
A person whose property is
injured by an overflow of water caused by an unlawful diversion or impounding
has remedies at law and in equity and may recover damages occasioned by the
overflow.

 

Tex. Water Code Ann. § 11.086(a)-(b) (Vernon 2008).

In Texas, sovereign immunity deprives a trial
court of subject-matter jurisdiction for lawsuits in which the state or certain
governmental units have been sued unless the State consents to suit.[2]
 Tex. Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 224 (Tex. 2004).  The sovereign immunity of
the State inures to the benefit of a municipality insofar as the municipality
engages in the exercise of governmental functions, except where that immunity
has been waived.  City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex. 1997).  Conversely, a municipality has no immunity when it engages in the exercise of
proprietary functions.[3]  Tooke
v. City of Mexia, 197 S.W.3d 325, 343 (Tex. 2006).  A plaintiff who sues a
governmental entity must establish the consent to suit.  Tex. Nat.
Resource Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).  Consent to
suit must ordinarily be found in a constitutional provision or legislative
enactment.  Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692,
695 (Tex. 2003).

A plea to the jurisdiction challenges the trial
court’s authority to determine the subject matter of the action.  Texas Dep’t Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether the
trial court has subject-matter jurisdiction is a question of law that we review
de novo.  IT-Davy, 74 S.W.3d at 855.  The plaintiff has the burden of
alleging facts that affirmatively establish the trial court’s subject-matter
jurisdiction.  Texas Ass’n Bus. v. Texas Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993).  If a trial court lacks subject-matter
jurisdiction over a claim, the claim must be dismissed.  Tex. Dep't
of Transp. v. Garza, 70 S.W.3d 802, 803, 808 (Tex. 2002).

Therefore, unless the Legislature has waived Midlothian's
governmental immunity from suit for Black's claim that Midlothian violated the
Water Code by permitting the developer to construct a detention pond that
caused an overflow of surface water on her property, the trial court has no
subject-matter jurisdiction over that claim, and we must require the trial
court to dismiss it.

It is well-settled in Texas that for the
Legislature to waive the State’s sovereign immunity, the statute at issue must
contain a clear and unambiguous expression of the Legislature's waiver of
immunity.  Wichita Falls State Hosp., 106 S.W.3d at 696.  The
same rule applies to the waiver of immunity for other governmental entities.  City
of LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex. 1995).  The rule
requiring a waiver of governmental immunity to be clear and unambiguous cannot be
applied so rigidly that the almost certain intent of the Legislature is
disregarded.  Id. at 292.  Legislative intent remains the polestar of
statutory construction.  Id.  If a statute leaves no reasonable doubt of
its purpose, we should not require perfect clarity, even in determining whether
governmental immunity has been waived.  See id.

In the absence of a clear and unambiguous waiver
of immunity we must, therefore, review the Supreme Court’s established
guidelines: (1) the statute in question must waive immunity "beyond
doubt"; (2) ambiguities are generally resolved in favor of immunity; (3)
if the Legislature requires the joinder of a governmental entity in a suit for
which immunity would otherwise attach, the Legislature has waived immunity; and
(4) if the Legislature simultaneously enacts legislation limiting the
governmental unit's potential liability, a waiver of immunity may be found.  Wichita Falls State Hosp., 106 S.W.3d at 697-98.

We will now apply these principles to determine
whether the Legislature waived Midlothian's governmental immunity from suit by
enacting section 11.086.




Express Waiver

The Water Code does not contain the type of
language that the Legislature generally uses to confirm its intent to waive
immunity from suit.[4]  However,
the Code Construction Act applies to the Water Code and it includes “government
or governmental subdivision or agency” in the definition of “person.”  Tex. Water Code Ann. § 1.002 (Vernon
2008); Tex. Gov’t Code Ann. §
311.005(2) (Vernon 2005).

Citing Abbott v. City of Princeton, Black
contends that the Legislature expressly waived Midlothian's governmental
immunity because the term “person” in subsection 11.086(a) includes
municipalities.  See Abbott v. City of Princeton, 721 S.W.2d 872,
876 (Tex. App.—Dallas 1986, writ ref’d n.r.e).  She argues that Abbott
reaches a clear and unambiguous conclusion that “person” as used in section
11.086 includes a municipality.  Id.  Section 1.002 of the Water Code
provides that section 311.005 of the Government Code applies to the Water Code,
and that section 311.005 of the Government Code defines "person" to
include "government or governmental subdivision or agency."  See
Tex. Water Code Ann. § 1.002(a) (Vernon 2000); Tex. Gov’t Code Ann. § 311.005(2).  According
to Black, by incorporating the Government Code's definition of person into
section 11.086(a), the Legislature clearly and unambiguously meant to waive Midlothian's
immunity from suit.

But, the Supreme Court of Texas has held, that the mere incorporation of a definition from one statute into
another that includes both private and governmental entities does not clearly
express legislative intent to waive the governmental entities' immunity from
suit.  Wichita Falls State Hosp., 106 S.W.3d at 699-700; see also
Duhart v. State, 610 S.W.2d 740, 742-43 (Tex. 1980) (holding that
Legislature's incorporation of Workers' Compensation Act provision preserving
private employee's cause of action for exemplary damages into statute providing
compensation benefits for state highway department employees did not clearly
and unambiguously waive State's immunity from suit).

Ambiguity

In Wichita Falls State Hospital v. Taylor, our
supreme court held that the Legislature's authorization of a suit against a
"mental health facility" in section 321.003 of the Health and Safety
Code (the patient's bill of rights) was not a clear and unambiguous waiver of
sovereign immunity.  See Wichita Falls State Hosp., 106 S.W.3d at
698-700 (concluding that Legislature did not waive sovereign immunity from
suits based on alleged violations of "patient's bill of rights" found
in chapter 321 of Health and Safety Code); accord Tex. Dep't of
Mental Health & Mental Retardation v. Lee, 38 S.W.3d 862, 870-71 (Tex.
App.—Fort Worth 2001, pet. denied) (same).  "Mental health facility"
is not defined in chapter 321 of the Health and Safety Code; instead, the
statute incorporates the definition of mental health facility found in section
571.003 of the Health and Safety Code, which includes both private and
governmental entities.  See Tex. Health & Safety Code Ann. § 321.003
(Vernon 2001); id. § 321.001(4); id. § 571.003(12) (Vernon Supp.
2008) ("'Mental health facility' means: (A) an inpatient or outpatient
mental health facility operated by the [Texas Department of Mental Health and
Mental Retardation], a federal agency, a political subdivision, or any
person[.]").  Upon concluding that the patient's bill of rights does not
waive the State's immunity beyond doubt because the statute achieved its stated
objective of regulating private treatment facilities even if suit against
the State is barred by immunity, the supreme court held:

At best, the incorporation of section 571.003 into
section 321.001 sewed ambiguity into the statute.  But in cases like this, we
require the Legislature to express its intent beyond doubt and will construe
ambiguities in a manner that retains the State's immunity. . . . The statute's
ambiguity precludes our finding an unmistakable Legislative intent to waive
sovereign immunity.

 

Wichita Falls State Hosp., 106 S.W.3d at 701.

 

Likewise, the Water Code's
incorporation of the definition of "person" from section 311.005 of
the Government Code does not waive Midlothian's immunity beyond doubt.  The
Water Code's provisions undoubtedly apply to private individuals and entities,
so they are not without meaning or purpose if they are construed against
waiver.  Moreover, the incorporation of section 311.005 of the Government Code
into the Water Code creates an ambiguity.  See id.  In such a case, we
must construe any ambiguities in a manner that retains Midlothian's immunity.  See
id.[5]  The
Water Code's ambiguity with regard to the use of "person" precludes
our finding "an unmistakable legislative intent to waive immunity."  See
id. at 701.

Required Joinder

The third factor we must consider is whether the
statute requires the governmental entity to be joined in the lawsuit.  Id. at 697-98.  Nothing in chapter 11 of the Water Code
requires the government to be joined in a lawsuit for a Water Code violation
arising out of the alleged diversion of surface waters onto a person's
property.  See Tex. Water Code
Ann. §§ 11.081-.097.  The lack of such a requirement is yet another
indication that the Legislature did not intend to waive immunity by
incorporating the Government Code's definition of person into section 11.086.  Wichita Falls State Hosp., 106 S.W.3d
at 697-98, 701.

Limiting Liability

The final factor we consider is whether the
statute provides an objective limitation on the State's potential liability.  Id. at 698.  When the Legislature waives immunity, it
generally includes in the statute a measure designed to protect the public
treasury from the consequences of the waiver.  Id. at 701.  Chapter 11
of the Water Code contains no such provision.  Therefore, the fact that Black’s
construction of the Water Code would subject Midlothian to indeterminate
damages awards without limitation reinforces our conclusion that the
Legislature did not intend to waive governmental immunity by mere implication. 
See id. at 702.

Conclusion

For all of these reasons, we hold that the Legislature's incorporation of the definition of
"person" from Government Code section 311.005 into the Water Code
does not constitute a clear and unambiguous waiver of immunity from suit for a
violation of section 11.086(a).[6]  Thus,
we sustain Midlothian’s second issue.

Inverse Condemnation Claim 

In its third issue, Midlothian complains of the
trial court's denial of its plea to the jurisdiction on Black’s inverse
condemnation claim.  Black brought an inverse condemnation claim seeking
recovery for damages to her property because she alleges that the excess
flooding on her property denied her access, which amounted to a taking. Midlothian contends that Black failed to affirmatively demonstrate that the trial court has
jurisdiction over her claims because Black failed to sufficiently allege an
inverse condemnation claim under article I, section 17 of the Texas
Constitution in her pleadings.  Specifically, Midlothian asserts that Black
failed to sufficiently allege the element of intent.

There is a clear and unambiguous waiver of
immunity from suit for inverse-condemnation claims within article I, section 17
of the Texas Constitution also known as the "takings clause."  See
Tex. Const. art. I, § 17.
 Therefore, governmental immunity does not shield Midlothian from a properly
pled claim for compensation under the state constitutional takings clause.  See
Tex. Const. art. I, § 17;
State v. Holland, 221 S.W.3d 639, 643 (Tex. 2007).  The takings clause
mandates that "[n]o person's property shall be taken, damaged or destroyed
for or applied to public use without adequate compensation being made, unless
by the consent of such person . . . ."  Tex. Const. art. I, § 17.

Generally, governmental entities compensate property
owners before appropriating their property, either by paying a mutually agreed
price or by paying the value as determined in a statutory condemnation
proceeding.  See Westgate, Ltd. v. State, 843 S.W.2d 448, 452 (Tex. 1992).  If, however, these entities appropriate property without paying adequate
compensation, the property owner may recover the resulting damages through an
inverse-condemnation claim.  See id.

An inverse condemnation may occur when a
governmental entity physically appropriates or invades the property, or when it
unreasonably interferes with the landowner's right to use and enjoy the
property, such as by restricting access or denying a permit for development.  See
id.  To properly assert an inverse-condemnation claim
against a governmental entity, a party must plead the following
elements: (1) the governmental entity intentionally performed an act in the
exercise of its lawful authority; (2) that resulted in the taking, damaging, or
destruction of the party's property; (3) for public use.  See Gen. Servs.
Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001); Steele
v. City of Houston, 603 S.W.2d 786, 790-91 (Tex. 1980); see also State
v. Hale, 136 Tex. 29, 146 S.W.2d 731, 736 (1941).

If the plaintiff’s petition does not properly
plead the elements of an inverse-condemnation claim, then immunity applies and
the inverse-condemnation claim must be dismissed for lack of subject-matter
jurisdiction.  See State v. Agnew, 2006 Tex. App. LEXIS
5096 at *3 (Tex. App.—Corpus Christi June 15, 2006, no pet.).  Whether
particular facts are enough to constitute a taking is a question of law.  See
Gen. Servs. Comm'n, 39 S.W.3d at 598; Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 936 (Tex. 1998).

To establish that Midlothian unlawfully "took"
or otherwise damaged Black’s property, she had to plead that Midlothian (1)
knew a specific act (its approval of the detention pond) was causing identifiable
harm (rainwater to overflow and damage the concrete portion of Black’s driveway);
or (2) knew that the specific property damage to Black was substantially
certain to result from an authorized government action (approval of the pond)
-- that is, that the damage is necessarily an incident to, or necessarily a
consequential result of' the government's action.  See City of Dallas v. Jennings, 142 S.W.3d 310, 314 (Tex. 2004).[7]  “When damage is merely the accidental result of
the government's act, there is no public benefit and the property cannot be
said to be ‘taken or damaged for public use.’"  Id. at 313 (quoting
Tex. Highway Dep't v. Weber, 147 Tex. 628, 219 S.W.2d 70, 71 (1949)).

In reviewing Midlothian's challenge to Black’s
pleadings, we construe the pleadings liberally in her favor and look to her
intent.  See Miranda, 133 S.W.3d at 226.  Black pled that "the acts
of Midlothian in evaluating, approving, and inspecting the facility were
intentional.”  She did not plead that Midlothian knew that Black’s damage was “necessarily
an incident to, or necessarily a consequential result of” Midlothian’s action.  See
 Jennings, 142 S.W.3d at 314.  Her petition contains no allegation that Midlothian knew that the damage was substantially certain to occur.  See id.; see also
Agnew, 2006 Tex. App. LEXIS 5096 at *4.  Black has therefore failed to plead
a valid inverse condemnation claim.

The Texas Supreme Court has stated that “[i]f a
plaintiff has been provided a reasonable opportunity to amend after a
governmental entity filed its plea to the jurisdiction, and plaintiff’s amended
petition still does not allege facts that would constitute a waiver of
immunity, then the trial court should dismiss.  Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004).

Black filed her original lawsuit on April 20, 2007,
and Midlothian filed its original answer and plea to the jurisdiction,
detailing the jurisdictional deficiencies on May 15, 2007.  The trial court then
allowed Black to file an amended petition, to which Midlothian immediately
filed an amended answer.  At the hearing on the plea to the jurisdiction,
Black’s counsel did not request additional time to further amend and stated
that he was satisfied with the pleadings.  Thus, the trial court provided Black
a reasonable opportunity to amend after Midlothian filed its plea to the
jurisdiction, and Black’s amended pleading still did not allege facts that
would support a claim of inverse condemnation.

We sustain Midlothian’s third issue.  See Agnew,
2006 Tex. App. LEXIS 5096 at *5; Bell v. City of Dallas, 146
S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.).

Summary

Because the Legislature has not waived Midlothian's
immunity from suit for Black’s Water Code violation claim, and because Black
failed to sufficiently plead a valid inverse condemnation claim, we hold that Midlothian is immune from suit.  Accordingly, we reverse the trial court's order
denying Midlothian's plea to the jurisdiction and remand the cause to the trial
court with instructions to dismiss Black’s suit against Midlothian.  Tex. R. App. P. 43.2.

 

 

BILL VANCE

Justice

 

 

 

Before Chief Justice
Gray,

            Justice Vance,
and

            Justice Reyna

Reversed and remanded
with instructions

Opinion delivered and
filed November 5, 2008

[CV06]









[1]  In its first issue, Midlothian argues that it
was immune from suit under the Texas Tort Claims Act.  Because Black has
withdrawn her argument on that issue, we do not address it.

 





[2]  The State's sovereign immunity extends to
various divisions of state government, including agencies, boards, hospitals,
and universities.  The appurtenant common-law doctrine of governmental immunity
similarly protects political subdivisions of the State, including counties,
cities, and school districts.  A political subdivision enjoys governmental
immunity from suit to the extent that immunity has not been abrogated by the
Legislature.  See Ben Bolt-Palito Blanco Cons. I.S.D. v. Texas Political
Subdivisions Prop./Cas. Joint Self Insurance Fund, 212 S.W.3d 320, 324
(Tex. 2004).





[3]  Midlothian asserts that it was engaged in a
governmental function, and Black does not dispute that assertion.





[4] 
See, e.g., Tex. Civ.
Prac. & Rem. Code Ann. § 101.025(a) (Vernon 2005) ("Sovereign
immunity to suit is waived and abolished to the extent of liability created by
this chapter."); id. § 63.007(b) (Vernon Supp. 2008) ("The
state's sovereign immunity to suit is waived only to the extent necessary to
authorize a garnishment action in accordance with this section."); id.
§ 81.010(d) (Vernon 2005) ("Governmental immunity to suit is waived and
abolished only to the extent of the liability created by Subsection
(b)."); Tex. Gov’t Code Ann.
§ 2007.004 (Vernon 2000) ("Sovereign immunity to suit and liability is
waived and abolished to the extent of liability created by this
chapter."); Tex. Prop. Code Ann.
§ 74.506(c) (Vernon Supp. 2008) ("The state's immunity from suit without
consent is abolished with respect to suits brought under this section.").





[5]  See also Magnolia
Petro. Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929, 934 (1935) (“Legislative
grants of property, rights, or privileges must be construed strictly in favor
of the state . . . and whatever is not unequivocally granted in clear and
explicit terms is withheld.  Any ambiguity or obscurity in the terms of the
statute must operate in favor of the state.").  If anything, section
11.086 is even more ambiguous than section 321.003 of the Health and Safety
code.  Section 321.003 provides that "[a] . . . mental health facility
that violates [the patient's bill of rights found in chapter 321] . . . is
liable to a person receiving care or treatment in or from the facility who is
harmed as a result of the violation."  Tex.
Health & Safety Code Ann. § 321.003(a) (emphasis supplied).  In
contrast, section 11.086 merely provides that "no person may divert . . .
the natural flow of surface waters . . . in a manner that damages the property
of another;" it does not state that such a person "is liable"
for the diversion.  Tex. Water Code Ann.
§ 11.086(a).  Both the Health and Safety Code and the Water Code provide that a
person who is injured because of a violation of the respective statutes may recover
damages.  See Tex. Health &
Safety Code Ann. § 321.003(b); Tex.
Water Code Ann. § 11.086(b). 

 





[6]               We decline to follow Abbott v.
City of Princeton, 721 S.W.2d 872, 876 (Tex. App.—Dallas 1986, writ ref'd
n.r.e.), disapproved on other grounds by Schneider Nat'l Carriers,
Inc. v. Bates, 147 S.W.3d 264, 281 (Tex. 2004).  Abbott did not
apply the clear and unambiguous standard adopted by the supreme court.  We also
note that in Abbott, on which Black relies almost exclusively, the court
focused on whether the governmental entities at issue were "persons"
for purposes of section 11.086 and its predecessor, not specifically on whether
the Legislature had waived the entities' sovereign immunity.

 





[7]  In Jennings, a home was flooded by the
city’s efforts to unclog a sewer line.  The parties agreed that an intentional
act was required.  The homeowners argued that only the city’s act need
be intentional; the city argued that it must have intended the damage. 
The supreme court said neither was correct: “if the government knows that
specific damage is substantially certain to result from its conduct, then
takings liability may arise even when the government did not particularly
desire the property to be damaged.”  City of Dallas v. Jennings, 142
S.W.3d 310, 314 (Tex. 2004).  “There may well be times when a governmental
entity is aware that its action will necessarily cause physical damage to
certain private property, and yet determines that the benefit to the public
outweighs the harm caused to that property.  In such a situation, the property may
be "damaged for public use.”  Id.